[Civil No. 3702. Filed November 25, 1935.]

[52 Pac. (2d) 483.]

STATE OF ARIZONA ex Rel. COLORADO RIVER COMMISSION OF ARIZONA and JOHN L. SULLIVAN, as Attorney General of the State of Arizona, Petitioner, v. ANA FROHMILLER, as Auditor of the State of Arizona, Respondent.

414

Mr. John L. Sullivan, Attorney General, for Petitioner.

Mr. Terrence A. Carson, for Respondent.

LOCKWOOD, C. J.—The state of Arizona, on the relation of the Colorado River Commission, hereinafter called the commission, and John L. Sullivan, as Attorney General of the state, hereinafter called the Attorney General, filed a petition in this court for a writ of *mandamus* directed against Ana Frohmiller, as auditor of the state, hereinafter called respondent, asking that she be ordered to approve a certain claim of James R. Moore against the state, and to draw a warrant on the state treasurer for the sum of $5,000

in payment thereof. The alternative writ was issued and the matter is before us on the petition and the return.

The questions involved are solely of law, the facts being in nowise in dispute, and we may state these facts so far as necessary for a decision of the case as follows: The commission was created by chapter 3 of the regular session of the Ninth Legislature (1929). Among its powers as set forth in said chapter are the following:

"2. To institute and prosecute, or appear and defend, in the name of, and in behalf of the state of Arizona such actions, suits or legal proceedings as may be necessary or may be deemed advisable to protect the rights and interests of citizens and property owners of the state of Arizona, or the rights of said state of Arizona, or the rights of said state in the Colorado river or its tributaries. The attorney general of the state shall be the attorney in any such actions or proceedings, and the commission with the attorney general shall have the right to employ such special attorneys as assistants to the attorney general, and other experts as it may be necessary to carry out the purposes of this commission or any of the duties imposed upon it."

By chapter 6 of the regular session of the Twelfth Legislature (1935), an appropriation for the purpose of carrying out the provisions of chapter 3, *supra,* was made in the following language:

"Section 2. That there be and there hereby is appropriated from any funds in the state treasury not otherwise appropriated sixty-nine thousand two hundred seventy-six dollars and fifty-one cents, or so much thereof as may be necessary, for the use of the attorney general for salaries and services, operation, travel and capital investment, in prosecuting and defending any suits brought by or against the state of Arizona in any manner relating to the Colorado river,

and furnishing legal services to the state or any of its agencies in all matters pertaining to said river.''

Prior to January 23, 1935, proceedings were pending in the Supreme Court of the United States which materially affected the rights of the state in the Colorado River, and on the date last mentioned at a meeting of the commission the following resolution was adopted:

''That the Attorney General's designation of Mr. J. R. Moore as Special Assistant to the Attorney General to represent Arizona's interests in the pending suit in the United States Supreme Court and to act for the Commission in all matters other than in connection with the pending negotiation with the Secretary of the Interior and the other basin states, be approved, and that Mr. Moore's compensation in such capacity, as suggested by the Attorney General, be fixed at $10,000.00 per annum, beginning January 7, 1935, payable semi-monthly, together with necessary expenses and disbursements, to continue until otherwise agreed, and subject to termination at any time by the joint action of the Attorney General and the Commission.''

In pursuance thereof, the Attorney General appointed Mr. Moore, and the latter took an oath of office as Special Assistant Attorney General as of January 18, 1935, and thereafter appeared before the Supreme Court of the United States and successfully defended the interests of Arizona in the action then pending. Mr. Moore continued to perform various services on behalf of the state under this appointment until October 7, 1935, at which time the commission, after reciting the necessity of further protection of the interests of the state in the Colorado River through various legal proceedings, adopted the following resolution:

''That the Attorney General be, and he hereby is, authorized to retain James R. Moore and Charles L.

Strouss as his special assistants, to represent the state, along with the Attorney General, in the prosecution of said action for an equitable apportionment of the waters of the Colorado River. That the compensation of said special assistants is hereby fixed as follows:

"James R. Moore, a retainer of $15,000.00, payable $5,000.00 forthwith and $10,000.00 upon entry of final decree in said suit or upon the termination of his employment as herein authorized by the Attorney General or other duly constituted authority of the State of Arizona; plus a yearly retainer of $12,500.00 and $25.00 per day while engaged in the performance of said duties outside of the State of Arizona, payable semi-monthly.

"Charles L. Strouss, a retainer of $6,000.00 per year, plus $25.00 per day while engaged in the performance of said duties outside of the State of Arizona, payable semi-monthly.

"Each of said assistants shall further be allowed and reimbursed for all necessary traveling and maintenance expenses and disbursements made in and about said work; provided, however, that their hotel and personal maintenance expenses shall not exceed $5.00 per day.

"That the compensation, expenses and disbursements of the Attorney General and said special assistants in connection with the suit for the allocation of the waters of the Colorado River shall be paid from the fund appropriated by Chapter 6, Regular Session of the 12th Legislature of the State of Arizona, Session Laws, 1935, and such other appropriations as the Legislature may from time to time make."

And on said date the Attorney General did employ Mr. Moore and Mr. Strouss in accordance with such resolution. Immediately thereafter Mr. Moore presented his claim to the auditor for the sum of $5,000, being the amount of his retainer as set forth in the foregoing resolution which, by its terms, was then payable, the claim having been approved by the Governor and the Attorney General. On October 17th the

auditor informed the Attorney General that she declined to approve the claim for the following reasons:

"1. The statutes do not authorize expenditures for retainers of this nature.

"2. Granting this retainer constitutes an increase in salary of an officer during his term and violates the provisions of our Constitution."

Whereupon the commission and the Attorney General, claiming that the interests of the state were being seriously injured and jeopardized by the failure of the auditor to approve the claim, filed their petition herein.

The respondent answered, admitting all of the allegations of the petition, except that the interests of the state were being injured by the failure of the auditor to approve the claim, and in reply to such last allegations maintained that they were merely conclusions of law, and further alleged that Mr. Moore had been named by the commission as Assistant Attorney General; that he had acted under said appointment from January 18, 1935, up to and including the 15th day of October of that year; and that by reason of his accepting and retaining such position he was precluded from claiming the $5,000 involved in this proceeding as a retainer under the resolution of the commission above set forth. The respondent further demurred to the petition on the ground that (1) the petitioners had no beneficial interest in the subject-matter of the action and were, therefore, not entitled to maintain it, and (2) that the petition showed on its face that it did not state a cause of action.

The position of the respondent as set forth in her brief is twofold, (1) that the proceeding, if it lies at all, should have been brought by Mr. Moore instead of by the commission and the Attorney General; (2) that even assuming the petitioners were the proper

persons to bring the proceeding. the petition shows on its face that the auditor was justified in refusing to approve the claim for the reason that it violated (a) section 17, part 2, article 4, of the Constitution of Arizona, (b) section 17 of article 22 of said Constitution, and (c) section 2799, Revised Code 1928. The first objection goes to the form of the action; the second goes to its substance. We think it unnecessary in this case to pass on the first objection for, in our opinion, it can and should more properly be decided on the merits rather than on a matter of procedure. We consider, therefore, the second objection. Section 17, part 2, article 4, of the Constitution reads as follows,

"The Legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office,"

while section 17 of article 22 is in the following language:

"All State and county officers (except notaries public) and all justices of the peace and constables, whose precinct includes a city or town or part thereof, shall be paid fixed and definite salaries, and they shall receive no fees for their own use."

It is contended by respondent that Mr. Moore is a public officer, and that being such the payment of the retainer involved in this action would be a violation of both sections of the Constitution, in that it increases his compensation during his term of office, contrary to the provisions of section 17 (part 2), article 4, and also is, in substance, the payment of a fee for his services rather than a fixed and definite salary, in violation of section 17, article 22.

The petitioner replies to these contentions by insisting (1) that Mr. Moore is not a public officer within the meaning of the Constitution, and (2) that so far as section 17 (part 2), article 4, is concerned, even if he be a public officer, since by the conditions of his appointment he has no definite term of office, he does not come within its prohibitions. It will be seen that these sections apply to public officers only, as distinct from ordinary servants or agents. If Mr. Moore is not a public officer, but is rather a mere agent, employee, or servant of the state, obviously he does not come within their terms. It is, therefore, necessary for us to determine in which category he falls. We had a somewhat similar question under consideration in the case of *Winsor* v. *Hunt*, 29 Ariz. 504, 243 Pac. 407, 413, and therein, after reviewing the authorities, we laid down the following test of a public officer as distinct from a mere employee or servant:

"We think that in 22 Ruling Case Law, 381, § 12, the chief elements of a 'public office' are well summed up. The specific position must be created by law; there must be certain definite duties imposed by law on the incumbent, and they must involve the exercise of some portion of the sovereign power. A position which has these three elements is presumably an 'office,' while one which lacks any of them is a mere 'employment.'"

That the Attorney General of the state of Arizona is a public officer under this definition is not open to argument. Section 60, Revised Code 1928, reads as follows:

"'*Officer*' *includes deputy.* Unless otherwise provided, each deputy of any state or county officer possesses the powers and may perform the duties attached by law to the office of the principal, and whenever the official name of any principal officer is

used in law conferring power, or imposing duties, liabilities or prohibitions, it includes his deputies.''

By its terms, obviously, the deputy of any state or county officer is equally an officer. It may be claimed that since Mr. Moore was called an ''Assistant Attorney General'' and not a ''Deputy Attorney General'' this section does not apply. We are of the opinion, however, that in view of the universal and well-known practice in that office, of which we take judicial notice, that the term ''Assistant Attorney General'' is and always has been applied to all deputies exercising the powers of the Attorney General, that such a person is in both law and fact a public officer of the state under the definition in *Winsor* v. *Hunt, supra.* But, it may be said, Mr. Moore, under the contract in question, was not acting as an ''Assistant Attorney General,'' but merely as an ''assistant to the Attorney General,'' and it is urged that the two positions are very different, the one being a public officer and the other a mere employee. It is very true that the employment by a public officer of a person does not always make him a deputy of such officer, and that the commission and Attorney General, by virtue of the provisions of chapter 3, *supra,* might well have employed special counsel to advise in the pending litigation without necessarily constituting such counsel officers of the state. This distinction is very frequently recognized in ordinary practice. At times it will happen that the attorneys who actually appear in court to represent clients and who, under the law, are authorized to bind such clients for the purpose of the litigation in which they are employed secure the assistance of other counsel merely for the purpose of advising the regular attorneys as to certain phases of the litigation, but with no actual control over its conduct. In such cases the special counsel have no

authority to bind the clients by any stipulation or act, and their lack of authority in this respect is generally indicated on all pleadings and briefs by adding to their names the words "of counsel" or some similar phrase. The difference, although it may seem technical, is, in truth, a vital one, the true attorney *representing* his client, while the other merely *advises,* with no authority to represent or bind. In which capacity does the record show Mr. Moore was acting when he filed his claim? We think the vital part of the resolution of employment which determines this question is that which states the Attorney General was to retain Mr. Moore "to represent the state." This unquestionably is an attempt to give him the authority to exercise the powers of an Assistant Attorney General and, taken with the fact that he had previously taken an oath of office as such an officer, a thing not required of a mere agent or employee, and that he had presented a claim for salary as Assistant Attorney General for a period extending beyond the date on which he had presented his claim for the retainer, we think the only reasonable conclusion is that it was understood and agreed that Mr. Moore was to have the powers of an Assistant Attorney General and not merely those of an employee of or adviser to the Attorney General. Such being the case, we think it matters little as to the precise name given him in the resolution. The test is, what were his powers, not what was his title. We hold, therefore, that on the record Mr. Moore was an Assistant Attorney General of the state of Arizona at the time he presented the claim in question, and as such was a public officer with the rights, duties and limitations thereof.

This brings us to the question as to whether the change in compensation granted to Mr. Moore

on October 7, 1935, was a violation of section 17, part 2, article 4, *supra.* It will be observed that the commission, acting with the Attorney General, might terminate Mr. Moore's employment at any time. Such being the case, he obviously had no fixed and definite term of office, but merely held at the will of the appointing powers. The question of whether such an officer is subject to the constitutional provisions of this nature has been before the courts many times, and it has been held practically universally that such provisions apply only to public officers, appointive or elective, who have a fixed term, and not to those who hold only at the pleasure of the appointing power. *Bayley* v. *Garrison,* 190 Cal. 690, 214 Pac. 871; *Somers* v. *State,* 5 S. D. 321, 58 N. W. 804; *State* v. *Board of Commrs.,* 29 N. M. 209, 222 Pac. 654, 31 A. L. R. 1310; *State* v. *Gordon,* 238 Mo. 168, 142 S. W. 315, Ann. Cas. 1913A 312; *Commissioners of Muskogee County* v. *Hart,* 29 Okl. 693, 119 Pac. 132; *Lexington* v. *Rennick,* 105 Ky. 779, 49 S. W. 787, 50 S. W. 1106. While the question has never been expressly determined in this jurisdiction, we think we have indicated our opinion thereon three times. In *State Consol. Pub. Co.* v. *Hill,* 39 Ariz. 21, 3 Pac. (2d) 525, the question arose as to whether the payment of increased compensation to the city attorney of Tucson violated the constitutional provision. Therein we pointed out that the city attorney of that city had a fixed term of two years. In the case of *Gay* v. *City of Glendale,* 41 Ariz. 207, 16 Pac. (2d) 971, the same constitutional provision was involved, and the public officers whose salaries had been changed had fixed terms of office. In *Crawford* v. *Hunt,* 41 Ariz. 229, 17 Pac. (2d) 802, 807, we stated "section 17 of part 2 of article 4, *supra,* applies to all officers having fixed terms." We are of the opinion, fol-

lowing the overwhelming weight of authority, that the provisions of section 17, part 2, article 4, *supra,* do not apply to public officers who have no fixed or definite term of office but hold merely at the will of the appointing power. The change in the compensation of Mr. Moore was not obnoxious to the provisions of the constitutional provision last cited.

We consider next section 17, article 22. This is an explicit declaration of the public policy of the state of Arizona. By its terms all public officers are to be paid fixed and definite salaries, and under no circumstances may receive fees of any nature. What is the difference between "salaries" and "fees" as referred to in the constitutional provision? We have had the question of the meaning of these two words before us in the case of *Cochise County* v. *Wilcox,* 14 Ariz. 234, 127 Pac. 758. Therein we concluded that, in substance, the difference was as follows: Salaries are fixed compensations based on services for definite and regular periods of time and paid at regular and fixed intervals, while fees are compensation for particular services rendered at irregular and uncertain periods. (See, also, *Board of Commrs.* v. *Trowbridge,* 42 Colo. 449, 95 Pac. 554; *Landis* v. *Lincoln County,* 31 Or. 424, 50 Pac. 530; *Blick* v. *Mercantile Trust & Dep. Co.,* 113 Md. 487, 77 Atl. 844.) In the one case the time element, both as to the services and the payment, is vital. In the other, it is not. It is plain, therefore, that the makers of our Constitution intended that all public officers should be compensated for their services by fixed and definite sums to be based on fixed and regular periods of service and paid at fixed and definite times. The times of payment are defined by our statute as being "twice in each month on regular days not more than sixteen days apart." Section 2799, Revised Code

1928. It is clear to us that a "retainer" of the nature described in the resolution of the commission falls within the definition of a fee rather than of a salary. It is a fixed sum payable regardless of whether any services are actually performed by the officer, and at a time, so far as the second portion is concerned, indefinite in the extreme, and it is to be paid in addition to a regular periodical salary and expenses. We are of the opinion that the payment of such a retainer to a public officer is contrary to the public policy of the state of Arizona as expressed in section 17, article 22, *supra,* and the auditor, therefore, did no more than her duty in rejecting the claim. It may be said that the commission and Attorney General, following the views expressed herein, have the right to pay Mr. Moore a retainer by expressly limiting his employment and authority to that of a special counsel, as described in this opinion, instead of that of an Assistant Attorney General. This is undoubtedly true, but that is not a matter for our consideration. What the commission and Attorney General may or may not do in the future to bring their conduct within the bounds of the Constitution is for them to determine and the wisdom of their acts, if legal, may be reviewed only by the people in their political capacity. We are concerned merely with the legality of what they *have* done.

The alternative writ of *mandamus* heretofore issued is quashed.

McALISTER and ROSS, JJ., concur.