## Ensinger *v.* Urban et al., Appellants.

500

Argued September 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Irwin S. Lasky,* for appellants.

*Gerald P. Sigal,* with him *Peter J. Cianci, Yaffe & Blumberg,* and *Wisler, Pearlstine, Talone, Craig & Garrity,* for appellee.

OPINION BY HOFFMAN, J., December 11, 1974:

This case presents issues concerning the scope of coverage of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §201, et seq.), and the computation of damages that may be awarded to an employee for his employer's failure to pay the overtime compensation required by the Act.[1]

The appellants, co-partners trading as General Truck Service, originally hired the appellee as a truck mechanic in 1957. From 1957 until 1963, the appellee was employed at the partnership's principal place of business in Philadelphia. In 1963, the appellee was transferred to a branch establishment located in King of Prussia, Pennsylvania. The partnership had a contract with the Bell Telephone Company to maintain Bell's fleet of trucks and automobiles upon which the appellee performed minor repairs. The Bell motor vehicle supervisor instructed the appellee before any repairs were undertaken. The appellee regularly serviced a fleet of approximately thirty-seven trucks, two of which made daily trips to Delaware.

While he was employed at the Philadelphia location, the appellee was paid on an hourly basis. When the appellee was transferred to King of Prussia, his compensation was changed to $150 per week. There is conflicting testimony in the record as to the number of hours per week the appellee would be required to work, but the lower court judge found as a fact that "The remuneration received by the [appellee] was for a forty

---

[1] Under §216(b), an employee may maintain an action to recover compensation "in any court of competent jurisdiction."

(40) hour week." The appellee claims that he worked 56 hours each week from September 9, 1966, through May 10, 1967, and is entitled to overtime compensation for this period of employment.

The initial question before this Court is whether the appellee is within the purview of the Fair Labor Standards Act. Under the Act, an employer is required to compensate his employees for all hours worked in excess of forty hours in a given week, "at a rate not less than one and one-half times the regular rate at which he is employed" if the employee "is engaged in commerce or in the production of goods for commerce, . . ." 29 U.S.C. §207(a) (1). Section 203(j) provides that "an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." Section 203(i) defines "goods" as "goods . . . or articles or subjects of commerce of any character, . . ."

From the above definitions, it is apparent that §207(a) does not require the employee to be directly engaged in commerce. It does not require him to be employed in the production of an article which itself becomes the subject of commerce. It is enough that he is employed in an occupation which is "closely related" or "directly essential" to the production of "articles or subjects of commerce of any character." See *Roland Electrical Co. v. Walling*, 326 U.S. 657 (1945). Clearly, the Bell Telephone Company is a corporation engaged in interstate commerce within the meaning of the Act. The issue, then, is whether the maintenance functions performed by the appellee on Bell Telephone trucks are sufficiently related to the interstate commerce generated by the operations of the Bell Telephone Company so

that the appellee can be said to have been "engaged in commerce." *Overstreet v. North Shore Corp.*, 318 U.S. 125 (1943). In deciding whether any given employee is within the ambit of the Act, the courts are faced with a "line-drawing" problem of considerable difficulty. There are, however, certain basic principles which are consistently applied. First, "engaged in commerce" is to be given a broad, liberal construction in order to effectuate the policies of the Act, which are essentially to provide for the general well-being of workers. Second, the applicability of the Act depends on the nature of the employee's work, and not on the character of the employer's business. See, *Brennan v. Wilson Building, Inc.*, 478 F. 2d 1090 (5th Cir. 1973). Keeping these principles in mind, we hold that the appellee is entitled to the protection afforded by the Act.

The trucks serviced by the appellee consisted of seventeen supply trucks, thirteen installation trucks, and seven coin box trucks. These trucks perform functions necessary to enable Bell Telephone to operate as an instrumentality of commerce.[2] Because the appellee's connection with the trucks was direct and substantial, the appellee must be deemed to have engaged in commerce. While the contribution of the appellee to the facilitation of interstate commerce may not seem overwhelming, the cumulative effect of the many people similarly situated is great.

Courts have reached this result in cases presenting similar, though not identical, factual patterns. In *Walling v. McCrady Construction Co.*, 156 F. 2d 932

---

[2] Appellants' reliance on the fact that only two of the Bell Telephone trucks serviced by the appellee ever crossed state lines is misplaced. What entitles the appellee to coverage is not the fact that the trucks themselves were instrumentalities of commerce, but the fact that the trucks were a vital and necessary element of Bell Telephone's overall interstate activities.

(3d Cir. 1946), employees of a construction company regraded an underground conduit and built a new conduit for a telephone company. The court held that the employees were covered by the Act because they were performing work vital to the functioning of an instrumentality of commerce.[3] Employees who repair motor vehicles have also been held to be within the Act, because those vehicles have been or will be used in interstate commerce. *Brennan v. Ventimiglia*, 356 F. Supp. 281 (N.D. Ohio 1973); *McComb v. Robertson*, 101 F. Supp. 1018 (M.D. Tenn. 1952). Employees of car rental agencies who repair the leased cars have been held to be covered under the Act. *Mitchell v. Pascal System, Inc.*, 226 F. 2d 391 (7th Cir. 1955); *Hertz Drivur-self Stations, Inc. v. United States*, 150 F. 2d 923 (8th Cir. 1945). Employees of a parking garage were afforded coverage by a District Court because the garage had contracts with commuters, hotels and businesses. The court held that "these contracts clearly facilitate the interstate transactions and are entwined with the continuous stream of interstate commerce." *Brennan v. S&M Enterprises*, 362 F. Supp. 595, 599 (D.D.C. 1973). Employees who guarded disabled vehicles on highways were held to be engaged in commerce. *Snelling v. O.K. Service Garage, Inc.*, 311 F. Supp. 842 (E.D. Ky. 1970).

Appellants next contend that even if the appellee is engaged in commerce, he is exempt from the overtime payment provisions of §207(a)(1) by virtue of §213

---

[3] It is clear that the amount of time an employee devotes to the interstate activity is not of any significance. The appellee in this case regularly and continuously performed duties related to interstate commerce. Thus, the lack of detailed proof as to what duties were performed on what trucks is unimportant. See, *Gray v. Swanney-McDonald, Inc.*, 436 F. 2d 652 (9th Cir. 1971), cert. denied, 402 U.S. 995 (1972); *Montalvo v. Tower Life Building*, 426 F. 2d 1135 (5th Cir. 1970).

(a) (1), which provides: "(a) The provisions of sections [6 and 7] shall not apply with respect to—(1) any employee employed in a bona fide executive, administrative, or professional capacity, . . ." In applying the exemption provisions of the Fair Labor Standards Act, the courts are required to give a narrow interpretation to the terms therein. *Hodgson v. N. G. Kallas Co.,* 480 F. 2d 994 (6th Cir. 1973); *Shultz v. Louisiana Trailer Sales, Inc.,* 428 F. 2d 61 (5th Cir. 1970), cert. denied 400 U.S. 902. The burden is on the employer to show that the plaintiff-employee is within the scope of the exemption. *Walling v. General Industries Co.,* 330 U.S. 545 (1947); *Reeves v. International Telephone & Telegraph Corp.,* 357 F. Supp. 295 (W.D. La. 1973). The trial judge found that the appellee was employed as an ordinary truck mechanic. The record is devoid of any indication that the appellee exercised discretionary power or made any managerial decisions. The lower court's finding is amply supported by the record.

Appellants' major contention concerns the manner in which the lower court computed the overtime it found to be due and owing the appellee. Section 207(a) (1) requires that an employee who works more than 40 hours in a given workweek be compensated for those overtime hours at a rate "not less than one and one-half times the regular rate at which he is employed." The obvious difficulty is in determining the appellee's "regular rate." The lower court calculated the appellee's "regular rate" as his weekly salary divided by forty hours. The appellants argue that the calculation should be the appellee's weekly salary divided by fifty-six hours, the claimed number of hours worked each week during the period under dispute.[4]

---

[4] In their brief, the appellants contend that the appellee failed to present testimony on which the court could determine the number of hours actually worked during the period under question.

506.

The appellants contend that the appellee was employed on a fixed salary basis, totally independent of the number of hours he worked in any given week. Thus, the appellants argue that the $150 received each week by the appellee covered the total number of hours that the appellee worked in that week. Because the appellee worked fifty-six hours each week, the appellants argue that his regular rate of pay is $150 divided by 56. Appellants further contend that the appellee was paid his regular rate for all fifty-six hours, and thus is entitled only to one-half of his regular rate for the sixteen hours of overtime he worked each week. The logic of this argument has been affirmed on numerous occasions and would be persuasive were it not for the absence of a contract between the appellant and the appellee. In support of his proposition, the appellants cite *Overnight Motor Transportation Co., Inc. v. Missel*, 316 U.S. 572 (1942). In that landmark case, the Supreme Court held that the overtime provisions of the Act applied equally to salaried employees as well as to those employed on an hourly basis. The Court reasoned that "regular rate of pay" was the fixed salary divided

---

The appellants seem to argue that the burden of keeping records was on the appellee. This is clearly not the law. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). The employee obviously has the burden of proving that he performed work for which he was not compensated. Where the employer keeps no records, the employee satisfies that burden by putting forth evidence sufficient for the court to infer the number of uncompensated hours worked. In this case, the appellee did so by oral testimony. The burden was on the employer to contradict that evidence. The lower court could properly adopt a reasonable and credible estimate of the employee himself. *Brennan v. Carl Roessler, Inc.*, 361 F. Supp. 229 (D. Conn. 1973). The fact that the appellants maintained no records (the appellee filled out time cards which were used to bill Bell Telephone, but these were discarded after being transcribed onto the invoices) cannot be used to support the contention that the appellee is entitled to no compensation at all.

by the number of hours worked, and thus the more hours worked in any week, the less the regular rate of pay, and consequently the less the overtime rate of pay. That reasoning, however, is premised on employment for a fixed wage regardless of the number of hours worked. In other words, it is based on contract: "No problem is presented in assimilating the computation of overtime for employees under *contract* for a fixed weekly wage for regular *contract* hours which are the actual hours worked, to similar computations for employees on hourly rates." 316 U.S. at 580 (emphasis added).

The lower court found as a fact that the appellee was not hired under a fixed salary for an indeterminate number of hours per week, but rather was hired for a forty hour week. One of the appellants testified that there was no discussion with the appellee in regard to the number of hours per week that would be required. Therefore, the lower court's finding was justified. In order to satisfy §207(a), an employer must "specify" a regular rate of pay for each employee from which that employee's overtime pay may be computed. *Hodgson v. Elm Hill Meats of Kentucky, Inc.,* 327 F. Supp. 1009 (E.D. Ky. 1971). There is sufficient "specification" if there is an agreement that the employee will receive the same salary regardless of the number of hours actually worked. In this case, there is no specified regular rate of pay because there is no agreement to that effect. On the state of this record, therefore, it was not error for the trial court to find that the parties had agreed on forty hours as the standard workweek.[5]

---

[5] The appellee's reliance on §7(f) of the Act is misplaced. That provision states that an employer does not violate §7(a) by employing an individual for more than forty hours per week, if that employee is employed pursuant to a bona fide individual contract and if the contract specifies a regular rate of pay. The appellee argues that the appellants are not within §7(f) because there is

Appellants' final contention concerns the lower court's award of liquidated damages. Section 216(b) provides that "Any employer who violates the provisions of . . . [§7 of this Act] . . . shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." The mandatory effect of this provision is nullified, however, by Section 11 of the Portal-to-Portal Act of 1947, 29 U.S.C. §260, which allows the court to reduce or eliminate the liquidated damages if, in the exercise of its discretion, the court finds that the employer's failure to pay the required overtime wages was in good faith, and that the employer had reasonable grounds to believe that his failure to pay overtime was not a violation of the Fair Labor Standards Act. The lower court held that the appellants had not satisfied their burden. We can find no abuse of discretion in the trial court's award of liquidated damages.

Order of the court below is affirmed.

---

no contract. The appellants do not contend that they are, but merely argue that the lower court's calculation of the overtime due the appellee was erroneous.