601 P.2d 322

**Lilburn O. HOCKERSMITH and Isabel Hockersmith, husband and wife, Plaintiffs/Appellants,**

v.

**CITY OF PATAGONIA, a municipal corporation, Defendant/Appellee.***

**No. 2 CA–CIV 3322.**

Court of Appeals of Arizona, Division 2.

Dec. 3, 1979.

*Editor's Note:* The opinion of the Court of Appeals of Arizona in *Bowslaugh v. Bowslaugh,* published in the advance sheets of this citation (601 P.2d 322) was withdrawn from this volume and will be republished.

Law Offices L. B. Solsberry by L. B. Solsberry, Nogales, for plaintiffs-appellants.

James A. Soto, Nogales, for defendant-appellee.

## OPINION

RICHMOND, Chief Judge.

Lilburn O. Hockersmith, former deputy marshal for the City of Patagonia, filed suit against the city for overtime wages under A.R.S. § 23–392. After trial to the court without a jury, he was awarded nominal damages of $1.00. The court found Hockersmith was entitled to overtime compensation for hours actually worked in excess of 40 hours per week, but that he had failed to establish how many such hours he actually worked and what his regular hourly rate of pay might have been. We affirm the judgment.

A.R.S. § 23–392 mandates compensation to any person engaged in law enforcement activities for each hour worked in excess of 40 hours in one work week either by payment of one and one-half times the regular rate at which he is employed or one hour of compensatory time off. Since the statute was not effective until February 28, 1977, testimony at trial was limited to the period between that date and September 28, 1978, the last day of Hockersmith's employment by the city.

Hockersmith testified that he worked five days a week with three 12-hour shifts and two 24-hour shifts. When he was on duty he was the only police officer inside the city limits and would respond to any calls that came in by radio or telephone. The telephone number in his home was the same as that in the marshal's office. His starting salary was $580 per month and was subsequently increased by five per cent. During a 24-hour shift Hockersmith spent time at home eating, sleeping, and relaxing, worked the school zones for approximately one-half hour three times a day, patrolled intermittently depending upon the traffic flow, and went out to patrol the bars prior to their 1 a. m. closing.

Hockersmith testified he had worked 84 hours per week from July 1977 to the end of September 1978 and therefore was entitled to overtime compensation for 44 hours per week. On cross-examination he admitted that he had no records to substantiate the hours he claimed and that he had engaged in personal activities during those hours with the limitation that he could not leave Patagonia. There were numerous nights when he received no calls. When Hockersmith was hired by the city council he was merely told that he would receive a monthly salary and his duties were left to the discretion of the marshal. He did not recall any discussion as to the number of hours but was told by the marshal that he was "to mainly answer calls and do some patrol and make yourself available." Asked what he did on a 24-hour shift, Hock-

ersmith responded that his "guesstimate" was that he spent at least 16 hours on patrol.

The marshal, who was a plaintiff below but is not a party to this appeal, testified that he too worked three 12-hour shifts and two 24-hour shifts and that the schedule was jointly agreed upon by himself and Hockersmith. He admitted that during these shifts there were times when he was sleeping, eating, visiting friends, and engaged in other personal activities.

The minutes of the May 8, 1978, council meeting recite the following:

> The Patagonia marshals' shifts were explained to those present. A 24 hour shift requires 4 hours of involved work and 20 hours on call. A 12 hour shift requires 6 hours log work and 6 hours on call. This enables the city to pay no overtime. Roger Newson [the marshal] explained that if too many hours were put in on one shift the marshals could adjust for the hours in the following week.

The seminal cases on "working time" within the overtime compensation provisions of the Fair Labor Standards Act are *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), and *Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944). In *Skidmore*, the court noted that there is no precise formula for determining whether waiting time constitutes "working time," stating:

> Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial courts. [Citation omitted.] This involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances. Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged.

His compensation may cover both waiting and task, or only performance of the task itself. Living quarters may in some situations be furnished as a facility of the task and in another as a part of its compensation. The law does not impose an arrangement upon the parties. It imposes upon the côurts the task of finding what the arrangement was.

65 S.Ct. at 163.

■ Whether sleeping time constitutes work time is the subject of an annotation at 44 A.L.R.2d 870. A collection of waiting time/working time cases is found beginning at 3 A.L.R.Fed. 675. The employee has the burden of proving he performed work for which he was not compensated and must present evidence sufficient to provide a reasonable approximation or inference as to the number of uncompensated work hours. *Rural Fire Protection Co. v. Hepp*, 366 F.2d 355 (9th Cir. 1966); *Ensinger v. Urbian*, 231 Pa.Super. 498, 332 A.2d 484 (1974).

■ Sleep time may be work time if it is subject to serious interruptions. *Bess v. Daniel*, 42 Ill.App.3d 401, 355 N.E.2d 556 (1976). Hockersmith claims he was entitled to be compensated for all of his hours while he was "on duty." Whether an employee is to be compensated for all hours while on duty, however, or only the actual hours worked is a question of fact to be determined in each case, and where an employee is largely unfettered except for the hours actually worked, only the latter are compensable. *Petrlik v. Community Realty Co.*, 347 F.Supp. 638 (D.Maryland 1972); *see also Crago v. Rockwell Manufacturing Co.*, 301 F.Supp. 743 (W.D.Pa.1969); *Perry v. George P. Livermore, Inc.*, 165 S.W.2d 782 (Tex.Civ.App.1942); *Brennan v. Williams Investment Co., Inc.*, 390 F.Supp. 981 (W.D. Tenn.1975).

In *Petrlik*, supra, the court in allowing overtime compensation accepted the employees' list of dates and hours for duties claimed to have been performed by them. In *Crago*, supra, a caretaker was hired to

work eight hours per day, five days per week, and was required to remain 16 hours. In holding that the plaintiff was entitled to overtime compensation for three hours per day, the court found that of the remaining 16 hours, eight were spent sleeping, two were spent eating, and presumably three were spent in personal activities.

■ Hockersmith failed to present sufficient evidence from which the court could infer the number of uncompensated hours of work. The schedule of shifts was worked out between him and the marshal. Although they were confined to the Patagonia city limits during their respective shifts, their activities were basically unfettered. They were not confined to any specific premises and were free to sleep, eat, and engage in personal activities. The council minutes of May 8, 1978, reflect the marshal's appraisal of their employment agreement—that if too many hours were actually worked during any one shift, adjustment would be made for the excess hours in the following week.

Affirmed.

HOWARD and HATHAWAY, JJ., concur.