741 P.2d 301

**Harry J. PATTON, Plaintiff-Appellee, Cross-Appellant,**

v.

**COUNTY OF MOHAVE, Arizona; Mohave County Board of Supervisors, Defendants-Appellants, Cross-Appellees.**

**No. 1 CA–CIV 8803.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 5, 1987.

(1) whether the appellee was required to follow the county claims statutes, A.R.S. § 11–621 *et seq.,* prior to initiating court action, and if so, whether he complied with the statutes;

(2) whether the evidence supported the trial court's findings of fact with respect to the amount of compensatory and vacation time for which the appellee was entitled to be paid;

(3) whether the trial court erred in trebling damages, pursuant to A.R.S. § 23–355, and in awarding prejudgment interest and attorneys' fees; and

(4) whether the appellee was entitled to compensation for hours of service when he was on standby status?

## FACTUAL BACKGROUND

The appellee, Harry J. Patton, was hired by the Mohave County Sheriff's Office in 1979 as a resident deputy for Dolan Springs, a small community approximately forty miles from Kingman. He was the sole representative of the sheriff's office and the sole law enforcement officer in an area covering over 2,000 square miles.

Patton was actually on active duty forty hours per week, but he was also on call twenty-four hours a day, seven days a week. He was required to respond to calls in his squad car and in uniform. The local phone number for the sheriff's office was the same as his home telephone number. He had to keep the sheriff's office in Kingman advised of his whereabouts at all times and make sure that he could always be reached by either telephone or radio. He could leave the area only with the permission of the sheriff's office, and such permission was in fact denied on at least two separate occasions.

Patton was also required to assist other law enforcement agencies, including the Arizona Highway Patrol, the Arizona State Parks Department and the National Park Service. Backup from the Mohave County Sheriff's Office was available only upon a wait of forty-five minutes or longer, depending upon the location of the trouble. Patton's duty also included becoming involved in the community by attending and

Wachtel, Biehn & Malm by Denis R. Malm, Lake Havasu, for plaintiff-appellee, cross-appellant.

William J. Ekstrom, Jr., Mohave Co. Atty. by William F. McDonald, Deputy Co. Atty., Kingman, for defendants-appellants, cross-appellees.

KLEINSCHMIDT, Judge.

This appeal arises from a Mohave County resident deputy sheriff's claim for unpaid wages. The issues on appeal are as follows:

participating in community and civic functions as the sheriff's "ambassador."

Patton's salary was based upon a forty-hour work week. He was free to set his own schedule but was supposed to work eight hours a day. He could work overtime and he in fact often did so. He was either paid time and a half or awarded one hour of compensatory time for each hour of overtime worked. Time cards were kept at the sheriff's office in Kingman, and were sent to the Mohave County Finance Department at the end of each two-week pay period. Patton typically phoned in his hours worked, and a clerk at the sheriff's office filled in his time cards. Occasionally, Patton filled in the cards himself. Each time card bore a printed verification which both the employee and the employee's supervisor had to sign. When he happened to be in Kingman, Patton often signed the cards before any time was filled in. Patton also kept a record of his hours worked on his home computer.

Patton terminated his employment in May of 1984. Before then, he had noticed a discrepancy between the amount of accrued compensatory time his pay stubs indicated and the amount his own records showed. Efforts to correct the discrepancy were unsuccessful. In addition, on several occasions Patton was denied vacation time and forced to use compensatory time instead. Because Mohave County limits the number of vacation hours an employee can accumulate, these denials caused Patton to lose the vacation hours he had accrued in excess of the allowable limit.

Upon his termination, Patton immediately went to the finance department to resolve the inconsistency between his own records and Mohave County's. He was summarily turned away without discussion. Further attempts to resolve the discrepancy with the finance department were similarly unsuccessful. When a letter he sent to the finance director stating his disagreement with the county's figures went unanswered, Patton filed suit against Mohave County. He sought the wages owed him for unpaid compensatory time, vacation time and sick leave, treble damages pursuant to A.R.S. § 23–355, compensation for unpaid standby time, and attorneys' fees. After a trial to the court, Mohave County was ordered to pay Patton for 525 hours of compensatory time at time and a half, trebled; 240 hours at time and a half for requested vacation time wrongfully denied him; prejudgment interest; and attorneys' fees of $6,000. The trial court also held that Patton was not entitled to compensation for standby time.

Mohave County claims on appeal that the trial court lacked jurisdiction of the suit because Patton failed to comply with the county claims statutes. In the alternative, the county concedes that it owes Patton some of the wages he claims, but that treble damages are not warranted, and that Patton is not, under any circumstances, entitled to compensation for standby time, prejudgment interest or attorney's fees. Patton cross-appeals, claiming the trial court erred in holding that he was not entitled to compensation for standby time and that the trial court abused its discretion in reducing the amount of attorneys' fees awarded.

## APPLICATION OF THE CLAIMS STATUTE

Arizona Revised Statutes § 11–622 requires a person who has a claim against the county to present the county board of supervisors with an itemized statement setting forth the basis of each charge within six months of the date the last item of the account accrues. Arizona Revised Statutes § 11–630(A) provides that a claimant who is dissatisfied with the board's disposition of his claim may sue the county and requires that such a suit be brought within six months of the board's final action on the claim.

■ As a general rule, the claim statutes establish the exclusive method of pursuing a claim against the county and failure to comply with them deprives the court of subject matter jurisdiction. *Yamamoto v. Santa Cruz County Board of Supervisors*, 124 Ariz. 538, 540, 606 P.2d 28, 30 (App.1980); *Norcor of America v. Southern Arizona International Livestock As-*

*sociation*, 122 Ariz. 542, 544, 596 P.2d 377, 379 (App.1979). Mohave County argues that the trial court's refusal to grant its motion to dismiss in this case was error because Patton failed to present the county with his claim for unpaid wages prior to filing this action. Patton maintains that A.R.S. § 11–621(A) states that official salaries are payable without a claim and that his deputy sheriff's salary falls within this exemption from the requirements of the claim statutes. We agree.

Arizona Revised Statutes § 11–621(A) (Supp.1986) provides as follows:

A payment exceeding five hundred dollars may be made from the treasury of the county upon demand duly presented and allowed, but compensation due to jurors and witnesses and official salaries shall be paid without presentation of a claim.

The claim statutes do not define the phrase "official salaries," but Arizona courts have interpreted it to mean the salaries due county public officers. *See Maricopa County v. Sharrit*, 49 Ariz. 396, 67 P.2d 232 (1937); *Santa Cruz County v. McKnight*, 20 Ariz. 103, 177 P. 256 (1918); *Phillips v. County of Graham*, 17 Ariz. 208, 149 P. 755 (1915). Our determination that Patton's deputy sheriff's salary was an official salary within the meaning of A.R.S. § 11–621(A) therefore requires us to distinguish between a public office and public employment. The Arizona Supreme Court considered this distinction in *Winsor v. Hunt*, 29 Ariz. 504, 243 P. 407 (1926), and held that in order to be a public office, "[t]he specific position must be created by law, there must be certain definite duties imposed on the incumbent, and they *must involve the exercise of some portion of the sovereign power*." *Id.* at 520–21, 243 P. at 413 (emphasis in original). In keeping with *Winsor*, A.R.S. § 38–101(3) defines a public officer as "the incumbent of any office, member of any board or commission, or his deputy or assistant exercising the powers and duties of the officer, other than clerks or mere employees of the officer."

The position of deputy county sheriff satisfies these requirements. Arizona Re-

vised Statutes § 11–401(A)(1) (Supp.1986), states that a sheriff is a county officer. The powers and duties of a sheriff are enumerated in A.R.S. § 11–441 (Supp.1986). Arizona Revised Statutes § 11–409 authorizes county officers to appoint deputies. The general powers and duties of such deputies are set forth in A.R.S. § 38–462, which provides as follows:

A. Unless otherwise provided, each deputy of a state or county officer possesses the powers and may perform the duties prescribed by law for the office of the principal.

B. When the official name of any principal officer is used in law conferring power, or imposing duties, liabilities, or prohibitions, it includes the officer's deputies.

An earlier version of this statute bore the heading " '[o]fficer' includes deputy." With the exception of its heading, the earlier statute was virtually identical to the present one. In *State v. Frohmiller*, 46 Ariz. 413, 52 P.2d 483 (1935), the Arizona Supreme Court interpreted the earlier statute to mean that the deputy of any state or county officer was also an officer. *Id.* at 421, 52 P.2d at 486; *see also Guy v. Mohave County*, 701 F.2d 73 (9th Cir.1982) (holding that sheriff's deputies are public officers as defined by A.R.S. § 38–101(3)); *Miles v. Wright*, 22 Ariz. 73, 194 P. 88 (1920) (holding that for purposes of liability under an official bond, "official acts" of deputy sheriff are those done under color and by virtue of his office).

There is a presumption that the legislature has notice of the meaning given to statutory terms through judicial construction and that it intends the terms to have this meaning when it uses them in subsequent enactments. *State v. Govorko*, 23 Ariz.App. 380, 383, 533 P.2d 688, 691 (1975). If the legislature had not intended to include deputy sheriffs among the public officials whose salaries are exempt from the requirements of the claim statutes under A.R.S. § 11–621(A), it could have stated this explicitly. *See Daou v. Harris*, 139 Ariz. 353, 357, 678 P.2d 934, 938 (1984); *Marine v. Allstate Insurance Co.*, 12 Ariz.

App. 229, 232, 469 P.2d 121, 124 (1970). We therefore affirm the trial court's determination that Patton was not required to file a claim in accordance with A.R.S. § 11–622 as a prerequisite to bringing this action.

### AWARD OF COMPENSATORY AND OVERTIME PAY

The trial court concluded that Patton was entitled to be paid for a total of 765 additional hours. Mohave County argues that Patton's time cards did not reflect approximately thirty of those hours and that the total failed to reflect forty hours of compensatory time Patton had already used. A review of the record reveals reasonable evidence to support the trial court's findings. We therefore cannot disturb those findings. *K & K Manufacturing, Inc. v. Union Bank*, 129 Ariz. 7, 9, 628 P.2d 44, 46 (App.1981).

### TREBLE DAMAGES, PREJUDGMENT INTEREST, AND ATTORNEYS' FEES

■ If an employer wrongfully fails to pay wages due an employee, the employee "may" recover treble the amount of unpaid wages due. A.R.S. § 23–355. An employer may withhold wages due an employee if there is a reasonable good-faith dispute. A.R.S. § 23–352(3). The treble damages provision is directed against employers who delay paying wages without reasonable justification or who try. to defraud employees of rightfully-earned wages. *Apache East, Inc. v. Wiegand*, 119 Ariz. 308, 312, 580 P.2d 769, 773 (App.1978). Treble damages are discretionary and should not be awarded when there is a reasonable good-faith wage dispute. *Id.*

We must therefore examine the record to determine whether there was a good-faith wage dispute, as Mohave County now contends. We initially note that the dispute was caused in part by Mohave County's bookkeeping methods. *See Apache East, Inc. v. Wiegand*, 119 Ariz. at 313, 580 P.2d at 774 (dispute, in part created by employer's negligent handling of bookkeeping and wage records, was not good-faith wage dis-

pute). The record also reveals that the problem was caused in part by the time cards submitted by Patton which were improperly filled in. Further, the record indicates that prior to trial Mohave County was able to determine that it did owe Patton for all but ten of the compensatory, vacation, and sick leave hours claimed. Mohave County offered to settle the claim by paying one and one-half times the amount owed plus attorneys' fees. It refused reimbursement for standby time. Patton declined the offer to settle.

■ Considering all of the foregoing, there is no doubt that Mohave County made a good-faith effort to settle the claim. This, however, is not synonomous with a good-faith refusal to pay the wages in the first place. Arizona Revised Statutes § 23–353(B) requires an employer to pay an employee *all* wages due him no later than the regular payday for the period during which the employee terminates his employment. Mohave County clearly did not do this, but relied instead upon its mistaken calculations of the wages owed Patton. Patton alerted the county to the discrepancy, yet the county initially refused to research or even to discuss the matter. Since the error was in large part caused by the county's erroneous bookkeeping and its failure to undertake a reasonable investigation upon request, its refusal to pay Patton the wages owed him cannot be said to have been based upon a good-faith dispute. The award of treble damages was well within the trial court's discretion.

### PREJUDGMENT INTEREST

The trial court awarded prejudgment interest on the basis that the claim was liquidated at the time it was made. Mohave County argues that the discrepancy between its records and Patton's records was the result of Patton's own errors and that the claim did not become liquidated until those records were reconciled.

■ In both contract and tort actions prejudgment interest is awarded when a claim is liquidated. *Fleming v. Pima County*, 141 Ariz. 149, 155, 685 P.2d 1301,

1307 (1984). A good-faith dispute over liability does not prevent the award of prejudgment interest on a liquidated claim. *Arizona Title Insurance & Trust Co. v. O'Malley Lumber Co.,* 14 Ariz.App. 486, 496, 484 P.2d 639, 649 (1971). A claim is liquidated when the evidence "'makes it possible to compute the amount with exactness, without reliance upon opinion or discretion.'" *Id.* (quoting C. McCormick, *Damages* § 54 (1935)).

Here, the number of hours for which Patton was owed compensation was fixed at the time he terminated his employment, despite the discrepancy between Mohave County's and Patton's records. The evidence at trial established the exact number of unpaid hours. No opinion or discretion played a part in this determination. The award of prejudgment interest was proper.

## ATTORNEYS' FEES

Mohave County argues that the trial court improperly awarded attorneys' fees since it was ready, able, and willing to pay the amounts awarded by the court. Attorneys' fees were awarded pursuant to A.R.S. § 12–341.01(A), which is discretionary with the court. *Solar-West, Inc. v. Falk,* 141 Ariz. 414, 421, 687 P.2d 939, 946 (App.1984). Patton claims on cross-appeal that the trial court abused its discretion by reducing the award of attorneys' fees from the requested $9,375 to $6,000. Patton was not successful in all of his claims. The trial court's discretionary reduction of the amount of fees awarded was therefore reasonably justified.

## DID THE TRIAL COURT PROPERLY DENY COMPENSATION FOR STANDBY TIME?

On cross-appeal, Patton claims that the trial court erred by not ruling that he was entitled to compensation for the hours he was on call and available to respond to any need of the community. The trial court held that the on-call hours were not so restrictive that they were primarily for the county's benefit. It further held that although Patton would be entitled to compensation for hours actually worked, he failed to submit sufficient evidence to justify an award for hours worked in addition to those for which compensatory time had already been awarded.

Arizona Revised Statutes § 23–392 provides that persons engaged in law enforcement activities must be compensated for each hour worked in excess of forty hours in one week, at either one and one-half the regular hourly rate or one hour compensatory time off. Deputy sheriffs are engaged in law enforcement activities. *Gilbert v. Mohave County,* 133 Ariz. 209, 211, 650 P.2d 511, 513 (App.1982). Apparently, Mohave County chose to compensate Patton by a combination of these options. The number of hours Patton worked in excess of forty hours per week was computed from his time cards. After his termination, Patton claimed for the first time that he was entitled to compensation for eight additional hours of each day he had worked during the entire period of his employment because he was on standby and subject to call at any time. He excluded eight hours of each day to account for sleep time, although he was subject to call at all hours and his sleep was, in fact, frequently interrupted.

Arizona courts have addressed the question of standby or on-call time in two recent cases. In *Hockersmith v. City of Patagonia,* 123 Ariz. 559, 601 P.2d 322 (App.1979), Division Two of this court held that a deputy marshall for the City of Patagonia was not entitled to overtime pay for periods he was on call but not on active duty. The court first noted that the employee has the burden of proving that he was working during the hours for which he claims he is owed compensation. The court then pointed out:

> Whether an employee is to be compensated for all hours while on duty, however, or only the actual hours worked is a question of fact to be determined in each case, and where an employee is largely unfettered except for the hours actually worked, only the latter are compensable.

*Id.* at 561, 601 P.2d at 324 (citations omitted). In *Hockersmith,* the court ultimately

determined that the employee did not present sufficient evidence from which the court could conclude that he was not compensated for hours he worked. The court reasoned that even though the employee could not leave the city limits during his shift, his activities were "basically unfettered." He did not have to stay at any particular location and could sleep, eat, and engage in personal activities as he chose. 123 Ariz. at 562, 601 P.2d at 325.

More recently, in *Prendergast v. City of Tempe*, 143 Ariz. 14, 691 P.2d 726 (App. 1984) this court held that police officers were working during meal periods and were therefore entitled to compensation for them. The police officers were required to remain in uniform, carry revolvers, respond to inquiries and requests for assistance, carry a hand radio or remain by a listed telephone, and were subject to several other restrictions. They could not conduct any private business during the meal breaks. The court noted that the pivotal test is "whether the waiting time in issue is predominantly for the employer's benefit or for the employee's benefit." 143 Ariz. at 19, 691 P.2d at 731. Under the facts before it, the court concluded that the meal periods were predominantly for the employer's benefit.

 We must view the facts in a light most favorable to upholding the rulings of the trial court. If there is any reasonable evidence supporting its findings, we cannot overturn it's decision. Although Patton had many restrictions on his activities and whereabouts during the time of his employment as a resident deputy, he was not required to remain at a specific location during his standby hours, and he was not prohibited from conducting his personal affairs. The evidence could reasonably support a conclusion that the standby time was predominantly for Patton's benefit. Patton is undoubtedly entitled to compensation for the time he actually worked during his claimed standby time—preparing reports, conducting vehicle inspections, answering or responding to calls, etc. However, as the trial court noted, he has not sufficiently documented the hours he actually worked and the duties he actually performed. He has therefore failed to meet his burden of proof. *See Hockersmith v. City of Patagonia*, 123 Ariz. at 562, 601 P.2d at 325.

Lastly, Patton seeks attorneys' fees on appeal pursuant to Rule 21, Arizona Rules of Civil Appellate Procedure. In our discretion, we grant this request.

The trial court is affirmed.

CORCORAN, P.J., and GREER, J., concur.