IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CLINTON ROBERTS, et al., *Plaintiffs/Appellants*,

*v.*

STATE OF ARIZONA, *Defendant/Appellee*.

No. 1 CA-CV 20-0060
FILED 3-2-2021

Appeal from the Superior Court in Maricopa County
No.  CV2019-005879
The Honorable Teresa A. Sanders, Judge

**REVERSED AND REMANDED**

COUNSEL

Napier, Coury & Baillie, P.C., Phoenix
By Michael Napier, Juliana B. Tallone
*Counsel for Plaintiffs/Appellants*

Arizona Attorney General's Office, Phoenix
By Kirstin Story, John Fry
*Counsel for Defendant/Appellee*

---

**OPINION**

Judge Lawrence F. Winthrop delivered the opinion of the Court, in which Presiding Judge Jennifer B. Campbell and Chief Judge Peter B. Swann joined.

---

**W I N T H R O P,** Judge:

¶1        Clinton Roberts and Donna Christopher-Hall, on behalf of themselves and other similarly situated corrections officers ("the Officers"), filed a complaint alleging their employer, the State of Arizona, violated Arizona Revised Statutes ("A.R.S.") section 23-392 by failing to pay overtime compensation for time they were required to spend undergoing "extensive security screenings" for each shift.  We hold that the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, does not preempt the Officers' claim and that the Officers alleged sufficient facts to defeat a motion to dismiss for their overtime claim under applicable statutes and regulations. Accordingly, we reverse and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

¶2        The Officers work for the Arizona Department of Corrections. Before they begin a shift, they are required to undergo an "extensive security screening" that adds an average of thirty minutes to each eight-hour workday.  The Officers allege A.R.S. § 23-392 requires the State to pay them overtime for the mandatory screening time and they seek treble damages under A.R.S. § 23-355.

¶3        The State moved to dismiss the complaint, arguing that claims for overtime pay must be brought under the FLSA, which the State contended preempts the state law claims.  Alternatively, the State argued that the Arizona statute must be interpreted consistently with the FSLA, as amended by the Portal-to-Portal Act ("Portal Act"), 29 U.S.C. §§ 251-262, and relevant federal regulations, which the State contends render the screenings not compensable.  The Officers countered that their state-law claim was not preempted because they cannot bring an FLSA claim against the State due to sovereign immunity.  The Officers also argued that Arizona has not adopted the Portal Act, and, under Arizona's expansive definition of "work," the time spent in mandatory security screenings is compensable. While the motion to dismiss was pending, the Officers requested leave to

file a second amended complaint to more accurately describe the class and assert a claim for an additional year of overtime.

¶4        The superior court granted the motion to dismiss, finding that although federal law did not preempt the Officers' claim, Arizona had implicitly adopted the Portal Act.  The court concluded, based on the Portal Act, the applicable regulations, and the Supreme Court decision in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014), that the time the Officers spend in security screenings is not compensable.  The court denied the Officers' motion to file a second amended complaint and motion for reconsideration.  The Officers filed a timely notice of appeal, and we have jurisdiction under A.R.S. § 12-2101(A)(3).[1]

## ANALYSIS

¶5        The dismissal of a complaint under Arizona Rule of Civil Procedure ("Rule") 12(b)(6) is reviewed *de novo*.  *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012).  A complaint should be dismissed "under Rule 12(b)(6) only if 'as a matter of law [] plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof.'"  *Id.* at 356, ¶ 8 (quoting *Fid. Sec. Life Ins. Co. v. Ariz. Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4 (1998)).  In considering a Rule 12(b)(6) motion, "courts must assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient."  *Id.* at ¶ 9.

   *I.        Preemption*

¶6        Under the FLSA, employers must pay employees a minimum wage and overtime compensation for each hour worked in excess of forty hours in one workweek.  29 U.S.C. §§ 206, 207; *Busk*, 574 U.S. at 31.  Arizona law similarly entitles certain public employees to overtime compensation for each hour worked in excess of forty hours in one workweek.  A.R.S.

---

[1]        The court dismissed the complaint without prejudice, but that ruling does not deprive this court of appellate jurisdiction.  The dismissal was based on a legal ruling, and the superior court then denied the Officers' motion to amend the complaint.  Because the court's ruling on an issue of law effectively mooted any attempt the Officers might make to amend their complaint, the court should have dismissed the complaint with prejudice, not without.  *See Bank of N.Y. Mellon v. Dodev*, 246 Ariz. 1, 7, ¶ 19 (App. 2018) ("[A] dismissal without prejudice is only appealable if the dismissal results in finality.").

§§ 23-391, -392(A) (applying to "any person engaged in law enforcement activities").

**¶7** The superior court rejected the State's contention that the FLSA preempted the Officers' claims under A.R.S. § 23-392. On appeal, the State reasserts its preemption argument. As a preliminary matter, the Officers argue that we lack jurisdiction to consider this argument because the State did not file a cross-appeal.

**¶8** A cross-appeal is not necessary if an "appellee in its brief seeks only to support or defend and uphold the judgment of the lower court from which the opposing party appeals." *CNL Hotels & Resorts, Inc. v. Maricopa Cnty.*, 230 Ariz. 21, 25, ¶ 20 (2012) (quoting *Maricopa Cnty. v. Corp. Comm'n*, 79 Ariz. 307, 310 (1955)). If successful, the State's preemption argument would constitute an alternative ground on which this court could affirm the judgment from which the Officers appeal. Further, the State made the same preemption argument in its motion to dismiss that it raises now. Thus, the issue of preemption is properly before this court without need for a cross-appeal. *See Gila River Indian Cmty. v. Dep't of Child Safety*, 242 Ariz. 277, 280, ¶ 9 (2017). The asserted federal preemption of a state law claim is a legal issue that we review *de novo*. *Dashi v. Nissan N. Am., Inc.*, 247 Ariz. 56, 58, ¶ 5 (App. 2019).

**¶9** Federal preemption can be express or implied. *Id.* at ¶ 8. In determining whether a federal statute preempts a state claim, "[c]ongressional intent is the touchstone." *Id.* at ¶ 7 (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)). "There is a presumption against preemption, based on 'the assumption that the historic police powers of the States were not to be superseded . . . unless that was the clear and manifest purpose of Congress . . . .'" *Id.* (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)).

**¶10** Under the theory of implied preemption, a claim may be preempted "where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988) (quoting *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987)). The purpose of the FLSA is to provide minimum protection to workers from "substandard wages and oppressive working hours." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d at 1144, 1150 (9th Cir. 2000) (quoting *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999)). The purpose of A.R.S. § 23-392 is similar. *See Pijanowski v. Yuma Cnty.*, 202 Ariz. 260, 264, ¶¶ 16-17 (App. 2002) (stating the primary purpose of A.R.S. § 23-392 is to authorize

overtime compensation to law enforcement personnel and to discourage routine use of extended overtime). Thus, the Arizona statute does not conflict with or impede the objectives of the FLSA.

¶11 In its argument, the State relies on *Williamson v. General Dynamics Corp.*, which held that "[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA." 208 F.3d at 1154. However, this statement fails to support the State's contention that the FLSA preempts a state overtime claim under A.R.S. § 23-392.

¶12 In *Williamson*, employees sued in California state court, alleging a state claim for "career fraud" by their employer. *Id.* at 1147-48. The employer removed the case to federal court on diversity grounds, and the district court ruled the FLSA preempted the state fraud claims. *Id.* at 1148-49, 1151. The Ninth Circuit disagreed, holding the state claims were not preempted because they did not conflict with the purpose of the FLSA. *Id.* at 1153-54. The court contrasted the employees' "career fraud" claims with claims for overtime, which would be preempted but which they had abandoned on appeal. *Id.*

¶13 The Arizona district court reached the same conclusion in *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 923-24 (D. Ariz. 2010). In *Colson*, the plaintiff brought FLSA claims and sought treble damages under Arizona's wage law, arguing that by failing to comply with the overtime provisions in the FLSA, the employer violated A.R.S. § 23-351, which requires an employer to pay overtime compensation within mandated time periods. *Id.* at 918-19.

¶14 In determining that the FLSA preempted the state wage claim, the *Colson* court adopted the reasoning in *Wood v. TriVita, Inc.*, CV-08-0765-PHX-SRB, 2008 WL 6566637, at *3-4 (D. Ariz. Sept. 18, 2008), another Arizona district court case addressing whether the FLSA preempts a claim brought under Arizona's wage laws. *Colson*, 687 F. Supp. 2d at 923-24. Both cases held that "overtime claims that are directly covered by the FLSA must be brought under the FLSA." *Id.* at 924 (quoting *Wood*, 2008 WL 6566637, at *4). Allowing such claims would "stand as an obstacle to the accomplishment and execution of the full purposes of the objectives of Congress in enacting the FLSA." *Id.* (quoting *Wood*, 2008 WL 6566637, at *4); *see also Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) ("Congress prescribed exclusive remedies in the FLSA for violations of its mandates.").

**¶15** These cases do not apply here because in each case, the plaintiffs relied on the FLSA as the source of their rights and invoked state law only as the remedy for the FLSA violation. "By contrast, plaintiffs here do not seek to enforce rights conferred under the FLSA through state-law remedies; they seek instead to enforce rights granted by independent state employment laws . . . ." *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 263 (3d Cir. 2012). This is consistent with the FLSA savings clause, which authorizes states to enact laws that provide the same or additional protections for employees as those provided in the FLSA and demonstrates that Congress did not intend the FLSA to be an employee's *exclusive* remedy for wage and overtime violations. *See* 29 U.S.C. § 218(a); *Williamson*, 208 F.3d at 1151.

**¶16** The weight of authority holds that the FLSA does not preempt a claim to enforce a more favorable state minimum wage or overtime law. *See Knepper*, 675 F.3d at 262-63; *Overnite Transp. Co. v. Tianti*, 926 F.2d 220, 222 (2d Cir. 1991) (citing cases); *Tegtmeier v. PJ Iowa, L.C.*, 189 F. Supp. 3d 811, 820-23 (S.D. Iowa 2016); *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 671-72 (D. Md. 2011).

**¶17** Accordingly, we hold the FLSA does not preempt the Officers' state law claims for overtime compensation.

## II. The Portal Act and Arizona Law

**¶18** In deciding the time spent in mandatory security screenings is not a compensable activity, the superior court concluded that Arizona has "implicitly adopted" the Portal Act as the law of Arizona because (1) A.R.S. § 23-392(A) is substantially similar to the FLSA § 207(a)(1), and (2) the Arizona regulation addressing overtime pay incorporates the FLSA and federal regulations defining "workweek" and "work period." *See* Ariz. Admin. Code ("A.A.C.") R2-5A-404(A). We review the interpretation of statutes and regulations *de novo*. *Compassionate Care Dispensary, Inc. v. Ariz. Dep't of Health Servs.*, 244 Ariz. 205, 211, ¶ 17 (App. 2018).

**¶19** Section 23-392(A) provides that law enforcement officers, including corrections officers, shall be paid overtime for work in excess of forty hours a week "if by the person's job classification overtime compensation is mandated by federal law." When interpreting a statute, our objective is to "effectuate the legislature's intent," and the "best indicator of that intent is the statute's plain language." *SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480, ¶ 8 (2018).

**¶20** The Officers contend the phrase "is mandated by federal law" relates to whether a person's job classification entitles them to overtime, i.e.,

whether they are considered exempt under federal law. *See* 29 U.S.C. § 213. But the text of the statute plainly requires the State to pay overtime when federal law would require payment of overtime. Such interpretation is supported by *Hockersmith v. City of Patagonia*, 123 Ariz. 559 (App. 1979), in which the court considered whether a police officer was entitled to overtime for the time he slept during a 24-hour on-call shift. Although the court did not expressly hold that federal law was controlling, its analysis relied solely on cases that decided whether an activity was compensable under the FLSA, as amended by the Portal Act. *Id.* at 561.

¶21 This interpretation of the Arizona statute is also consistent with the Arizona Administrative Code regulations that apply A.R.S. § 23-392, which refer to federal regulations issued under the FLSA. Subsection R2-5A-404(C)(1) expressly states that overtime for public employees consists of all hours in excess of forty hours in a "workweek" or "work period *as defined by the FLSA*." (Emphasis added.) Additionally, A.A.C. R2-5A-404(A) incorporates two federal regulations, 29 C.F.R. pts. 553 and 778, to define a workweek or work period under Arizona law. *See* 29 C.F.R. §§ 553.221(b) ("[Compensable] time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity . . . ."), 778.320(b) (citing the Portal Act as source to determine whether an activity is compensable). Parts 553 and 778, in turn, refer to 29 C.F.R. pts. 785 and 790 to determine what constitutes compensable work hours. *See, e.g.*, 29 C.F.R. §§ 553.221(a), 778.103, 778.223. Notably, Part 785 interprets the Portal Act and its exclusion of preliminary and postliminary activities, absent contract, custom, or practice to the contrary. *See* 29 C.F.R. § 785.9(a).

¶22 The Officers argue that because A.A.C. R2-5A-404(A)(1) only refers to 29 C.F.R. pts. 553 and 778, we cannot infer that it implicitly adopts Parts 785 and 790 under the rule of statutory construction that "[t]he expression of one or more items in a class generally indicates an intent to exclude all items of the same class that are not expressed." *In re Estate of Agans*, 196 Ariz. 367, 370, ¶ 16 (App. 1999). But we presume that when drafting the regulations, the director knew that 29 C.F.R. pts. 553 and 778 referred—more than once—to Parts 785 and 790. *See Daou v. Harris*, 139 Ariz. 353, 357 (1984) (courts presume that the legislature knows the existing laws when it passes a statute).

¶23 The Officers argue the Arizona regulations are not decisive; they contend that any decision to adopt the Portal Act is for the legislature, not an administrative agency. But this argument fails to recognize that the

Arizona Legislature amended A.R.S. §§ 23-391 and -392 to include the phrase "is mandated by federal law" in 1986, long after enactment of the Portal Act in 1947. *See* 1986 Ariz. Sess. Laws, ch. 218, §§ 1-2 (2d Reg. Sess.); Portal-to-Portal Act of 1947, ch. 52, § 4, 61 Stat. 86. In determining whether an activity is compensable for the purposes of overtime, the Portal Act and the FLSA are equally part of federal law. There is no distinction in A.R.S. §§ 23-391 and -392 between incorporating the FLSA and incorporating the Portal Act.

¶24        Moreover, the legislature explicitly authorized the director of the Department of Administration to adopt rules and procedures regarding the administration of state personnel. A.R.S. § 41-743(B). We presume the legislature is aware of the administrative regulations the director issued, and it has not modified or revoked any of the references to federal law in those regulations.

¶25        The federal regulations provide comprehensive guidance in interpreting the FLSA, as amended by the Portal Act. Although A.R.S. § 23-392 and the applicable state regulations do not expressly refer to the Portal Act, we conclude that the explicit reference to "federal law" in that section along with the express incorporation of C.F.R. pts. 553 and 778 allow for reference to Parts 785 and 790 for guidance. *See* A.A.C. R2-5A-404(A)(1). As the Officers point out, Parts 778, 785, and 790 are interpretative bulletins, not regulations. *See* 29 C.F.R. §§ 778.1(a), 785.2, 790.1(c). These interpretations are not controlling but are "'entitled to respect' . . . to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *see also* 29 C.F.R. §§ 775.1 (advisory interpretations provide guidance to the administrator unless courts rule otherwise), 785.2 (recognizing courts make final interpretations of the FLSA and that regulations in this part are intended as a "practical guide" as to how the administrator will apply the FLSA (quoting *Skidmore*, 323 U.S. at 138)).

¶26        Finally, the Officers argue that we should follow *In re Amazon.com*, 905 F.3d 387, 404-05 (6th Cir. 2018), which concluded that Arizona law was inconsistent with the Portal Act because A.A.C. R20-5-1202(9) and (12) defined "hours worked" and "on duty" more broadly than the federal regulations. The court also quoted an advisory policy statement from the Industrial Commission of Arizona[2] that to determine "hours

---

[2]        Indus. Comm'n of Ariz., Substantive Policy Statement Regarding Interpretation of "Hours Worked" for Purposes of the Arizona Minimum

worked" under A.R.S. § 23-364(A), the *Commission* will look to 29 C.F.R. pt. 785 for guidance "where consistent with A.A.C. R20-5-1201 et seq." *In re Amazon.com*, 905 F.3d at 405. But these regulations and the policy statement apply to wage claims by *private* employees, not claims by *public* employees. *See* A.A.C. R20-5-1202(1); A.R.S. §§ 23-362(A)-(B) (version 2),[3] -371(F)-(G). Thus, the court's holding in *In re Amazon.com* does not apply to claims brought under A.R.S. § 23-392.

¶27 We conclude that, under A.R.S. § 23-392, whether a public employee is entitled to overtime for performing an activity is guided by federal law, specifically the FLSA as amended by the Portal Act. The Arizona regulations are consistent with the Arizona statute. Thus, we need not decide whether Arizona has implicitly "adopted" the Portal Act by administrative regulation alone.

### III. Compensable Activities

¶28 The FLSA requires an employer to pay overtime compensation for all work in excess of forty hours in a workweek. 29 U.S.C. § 207. The statute does not, however, define "work" or "workweek." In response to earlier Supreme Court cases that defined those terms expansively, Congress enacted the Portal Act, which created two exclusions from the definition of "work." *See* 29 U.S.C. §§ 251-262; *Busk*, 574 U.S. at 31-32. The Portal Act excludes time an employee spends:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

> (2) activities which are preliminary to or postliminary to said principal activity or activities,

> which occur either prior to the time on any particular workday at which such employee commences, or subsequent

---

Wage Act (Aug. 16, 2007), https://www.azica.gov/sites/default/files/migrated_pdf/Labor_MinWag_SubstantivePolicyHoursWorked_0001140.pdf.

[3] Two statutes numbered § 23-362 appear in the code, one titled "Minimum wage; prohibition" in Article 7 of Chapter 2 of Title 23 and the second titled "Definitions" in Article 8 of the same chapter. Our reference to § 23-362 in this opinion refers to the latter, which we describe as "version 2" for clarity. *Cf.* A.A.C. R20-5-1202.

to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

**¶29**      Since enactment of the Portal Act, the Supreme Court "has consistently interpreted 'the term "principal activity or activities" [to] embrac[e] all activities which are an "integral and indispensable part of the principal activities."'" *Busk*, 574 U.S. at 33 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005) (quoting *Steiner v. Mitchell*, 350 U.S. 247, 252-53 (1956))). An activity is "integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.*

**¶30**      In *Busk*, the Court considered the compensability of time that retail warehouse employees spent waiting to undergo and undergoing mandatory security screenings at the end of each shift. *Id.* at 29. The Court compared the activities of employees in several other cases. The Court cited *Steiner*, which considered "the time battery-plant employees spent showering and changing clothes because the chemicals in the plant were 'toxic to human beings' and the employer conceded" these activities were indispensable and integral to the employees' "productive work." *Id.* at 34 (quoting *Steiner*, 350 U.S. at 249, 251). The Court also cited *Mitchell v. King Packing Co.*, 350 U.S. 260 (1956), which concluded that the time meatpacking employees spent sharpening their knives was compensable because dull knives would be detrimental to production and product quality, "'cause waste,' and lead to 'accidents.'" *Busk*, 574 U.S. at 34 (quoting *King Packing Co.*, 350 U.S. at 262).

**¶31**      Conversely, the "time poultry-plant employees spent *waiting* to don protective gear" was not compensable because "waiting was 'two steps removed from the productive activity on the assembly line.'" *Id.* (emphasis added) (quoting *IBP*, 546 U.S. at 42).[4] *Busk* noted that the federal regulations are consistent with these cases, highlighting one regulation example that explains if changing clothes is a mere convenience and not directly related to the principal activities, it is not compensable. 574 U.S. at 34 (citing 29 C.F.R. § 790.8(c)).

---

[4]    The employer in *IBP* conceded that the time spent changing was "integral and indispensable" to the employees' principal activity and only disputed time spent *waiting* to change. *IBP*, 546 U.S. at 32, 40.

¶32          The State contends this case is controlled by *Busk*, which held the retail workers' post-shift security screenings were not compensable. *Id.* at 35. That *Busk* involved security screenings is not dispositive. The appropriate analysis focuses on the work the employee is hired to perform, which in *Busk* was primarily retrieving retail products and packaging them for shipment. *Id.* The test is not simply whether an employer requires the activity; that would be inconsistent with the Portal Act and overly broad. *Id.* at 36. Rather, the test for compensability is whether the activity is "one with which the employee cannot dispense if he is to perform his principal activities." *Id.* at 33. The Court in *Busk* concluded that a security screening at the end of each shift was not integral or indispensable to the warehouse workers' principal activities. *Id.* at 37. Applying the same analysis, we must consider the Officers' principal activities.

¶33          The first amended complaint does not describe the principal activities that corrections officers are employed to perform. While it is technically accurate that the Officers are not employed to undergo security screenings, *see id.* at 35, the first amended complaint alleges that the mission of the Department of Corrections is to operate secure and orderly prisons and that preventing the introduction of contraband furthers that mission. It is reasonable to infer that the Officers' duties include maintaining the safety and security of the prisons. *See Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008) (holding that on a motion to dismiss, courts must indulge all reasonable inferences from the well-pled factual allegations in a complaint).

¶34          In considering whether the security screenings are integral to the Officers' principal activities, we are persuaded by *Aguilar v. Management & Training Corp.*, 948 F.3d 1270 (10th Cir. 2020), which held that the time corrections officers spent undergoing pre-shift security screenings was compensable. The employer in *Aguilar* required the screenings "to ensure 'the overall safety of the prison' and to prevent officers from inadvertently or intentionally bringing contraband like weapons or cell phones into the prison." *Id.* The court distinguished the post-shift theft-prevention screening at issue in *Busk* because it had "no connection at all" to the work the warehouse employees performed. *Id.* at 1277-78.

¶35          Like the security screenings in *Aguilar*, the pre-shift security screenings here are inherently related to the Officers' work of providing a secure prison and preventing the introduction of contraband. "Indeed, the security screening and the officers' work share the same purpose." *Id.* at 1278.

¶36        The State contends that because the Officers could perform their work without undergoing the security screening, the screenings are not indispensable to their work.  We disagree.  The same could be said about the meat packing employees who had to sharpen their knives in *King Packing Co.*, 350 U.S. at 262, and the chemical plant employees who spent time showering and changing out of toxic clothing in *Steiner*, 350 U.S. at 248-49.  The screenings are indispensable to the Officers' "productive work."  *See id.* at 251.  Accordingly, eliminating the screenings would impair the Officers' ability to perform this work.  *See Busk*, 574 U.S. at 35; *id.* at 37-38 (Sotomayor, J., concurring) ("[A]n activity is 'indispensable' to another, principal activity only when an employee could not dispense with it *without impairing his ability to perform the principal activity safely and effectively.*" (emphasis added)); *see also Aguilar*, 948 F.3d at 1279.

¶37        The security screening process is integral and indispensable to the Officers' principal, compensable activities of maintaining safe and secure prisons; therefore, the screenings constitute the start of the Officers' workday.  *See Aguilar*, 948 F.3d at 1279 (citing *IBP*, 546 U.S. at 28).[5]  Based on the foregoing, we construe A.R.S. § 23-392 and the related administrative regulations to require that the Officers' time spent in security screenings—as alleged by the Officers—is compensable and thus subject to proper overtime compensation.[6]

## CONCLUSION

¶38        We reverse the order dismissing the complaint and remand for further proceedings consistent with this decision.  The Officers are

---

[5]        The Officers also cite *Hootselle v. Missouri Department of Corrections*, which held that corrections officers' pre- and post-shift activities were "integral and indispensable" to the principal activities for which they were hired and, therefore, compensable.  WD 82229, 2019 WL 4935933, at *3 (Mo. Ct. App. Oct. 8, 2019) (appeal docketed Feb. 4, 2020).  But the employer in *Hootselle* did not dispute that the officers were "on duty" during these pre- and post-shift activities.  *Id.*  The Supreme Court of Missouri held oral argument on this case in April 2020 and as of this writing has not issued a decision.  *Hootselle v. Mo. Dep't of Corr.*, SC98252 (Mo. argued Apr. 22, 2020).  Given the factual distinction and the case's current disposition, *Hootselle* is not persuasive.

[6]        In light of our decision, we need not address whether the superior court's refusal to allow plaintiffs to file a second amended complaint was an abuse of discretion.

entitled to taxable costs on appeal under A.R.S. § 12-342 upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA