IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

**CLINTON ROBERTS, ET AL.,**
*Plaintiffs/Appellants,*

*v.*

**STATE OF ARIZONA,**
*Defendant/Appellee.*

————————

No. CV-21-0077-PR
Filed July 8, 2022

————————

Appeal from the Superior Court in Maricopa County
The Honorable Teresa A. Sanders, Judge
No. CV2019-005879
**REVERSED AND REMANDED**

————————

Opinion of the Court of Appeals, Division One
250 Ariz. 590 (App. 2021)
**VACATED**

————————

COUNSEL:

Michael Napier (argued), Cassidy L. Bacon, Juliana Tallone, Napier, Baillie, Wilson Bacon & Tallone P.C., Phoenix, Attorneys for Clinton Roberts and Donna Christopher-Hall

Mark Brnovich, Arizona Attorney General, Joseph A. Kanefield, Chief Deputy and Chief of Staff, Wilson C. Freeman (argued), Senior Litigation Counsel, Drew C. Ensign, Section Chief, Civil Appeals, Kirstin Story, and Daniel P. Schaack, Assistant Attorneys General, Phoenix, Attorneys for State of Arizona

Aditya Dynar, Pacific Legal Foundation, Arlington, VA, Attorney for Amicus Curiae Pacific Legal Foundation

————————

JUSTICE BOLICK authored the opinion of the Court, in which VICE CHIEF JUSTICE TIMMER and JUSTICES LOPEZ, BEENE, MONTGOMERY, KING, and PELANDER (Retired) joined.*

_____

JUSTICE BOLICK, opinion of the Court:

¶1        This case presents the question of whether the State of Arizona has incorporated the Portal-to-Portal Act, 29 U.S.C. §§ 251–262, into A.R.S. § 23-392 to govern Arizona corrections officers' claims for overtime compensation for time spent in mandatory pre-shift security screenings. We hold that for purposes of defining "work" to determine overtime eligibility for law enforcement officers under § 23-392, the state has not incorporated the Portal-to-Portal Act into § 23-392, and state agency regulations purporting to do so are not legally binding. Therefore, contrary to the decisions of the courts below, whether the corrections officers are entitled to overtime should be decided as a matter of state law.

**I.**

¶2        Plaintiffs are corrections officers ("the Officers") who brought a class action against the State for compensation that was allegedly denied by the Arizona Department of Corrections, Rehabilitation & Reentry for time spent in mandatory and "extensive security screening prior to undertaking their assigned duties." The complaint alleges the following facts: The Officers must wait in line at checkpoints for screenings before gaining access to prison facilities. During the screenings, the Officers must empty all personal possessions for a search and pass through a scanner and turnstile. The Officers must then wait for transportation to their assigned work unit, where the same screening process is repeated. After completing this second pre-shift screening, the Officers work a full eight-hour shift without breaks. The Officers allege these screenings add approximately thirty minutes of unpaid, mandatory time to their shifts.

_____

* Chief Justice Brutinel is recused from this matter. Pursuant to article 6, section 3, of the Arizona Constitution, Justice John Pelander (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

¶3          In the superior court, the Officers alleged that § 23-392 requires the state to pay overtime compensation for the mandatory pre-shift security screenings and sought treble damages under A.R.S. § 23-355.  The State moved to dismiss the complaint pursuant to Arizona Rule of Civil Procedure 12(b)(6), arguing the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, preempts the Officers' state law claim.  Alternatively, the State argued that Arizona law incorporates the Portal-to-Portal Act ("Portal Act"), 29 U.S.C. §§ 251–262, an amendment to the FLSA, which renders the Officers' time spent in security screenings not compensable.

¶4          The Officers denied that the FLSA preempts state law.  They also argued that the Portal Act has not been incorporated into Arizona law either by statute or regulation, that the claims are compensable under state law because of Arizona's broad interpretation of "work," and that they are entitled to overtime compensation even if the Portal Act applies.

¶5          The trial court granted the State's motion to dismiss.  The court concluded that federal law did not preempt the Officers' claims, but that Arizona had adopted the Portal Act by implication, rendering the pre-shift security screening not compensable.

¶6          The court of appeals reversed and held that the Officers' claims were not preempted by the FLSA, *Roberts v. State*, 250 Ariz. 590, 595 ¶ 17 (App. 2021), that the Portal Act was incorporated in Arizona through § 23-392 and by agency regulations, *id.* at 597 ¶ 27, and that the pre-shift screenings were compensable activities under the Portal Act, *id.* at 599 ¶ 37.

¶7          We granted review on whether, under federal law as incorporated in Arizona, corrections officers must be compensated for time spent in pre-shift security screenings.  Because this issue assumed that Arizona law incorporated federal law, following oral argument, we invited further supplemental briefing on the following issues: (1) Whether, and to what extent, has the Portal Act been incorporated into § 23-392(A); (2) What does the language in § 23-392(A)(1) ("if by the person's job classification overtime compensation is mandated by federal law") refer to; and (3) Whether the Arizona Administrative Code regulations are binding, and, if so, whether the legislature properly delegated to the Director of the Arizona Department of Administration ("AZDOA") the authority to incorporate federal law and the Code of Federal Regulations beyond what

3

§ 23-392(A) does. These are important questions of statewide concern. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution. In the context of a Rule 12(b)(6) dismissal, the case presents pure questions of law, which we review de novo. *See State v. Hansen*, 215 Ariz. 287, 289 ¶ 6 (2007).

¶8        Although the State has abandoned its argument below that the FLSA preempts state law regarding the definition of work and eligibility for overtime, it maintains (as the court of appeals held) that § 23-392(A) and state agency regulations incorporate the Portal Act, as well as the federal regulations adopted to effectuate the Portal Act. As this case presents complex issues of the interaction between state and federal law and the scope of administrative agency authority, we begin with an overview of the pertinent state and federal law.

## II.

¶9        The FLSA was adopted in 1938. Six years later, the United States Supreme Court addressed whether activities that are not part of the job, but are still required by the employer, count as compensable work under the FLSA. *Tenn. Coal, Iron & R.R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 593–94 (1944). The Court held that compulsory travel within a mine to reach the job site could qualify as work because it "is at all times under [the employer's] strict control and supervision," and "is not primarily undertaken for the convenience of the miners" but "is spent for the benefit of" the employer. *Id.* at 598–99.

¶10        Congress narrowed the impact of *Tennessee Coal* in 1947 by adding the Portal Act to the FLSA, providing among other things that employers are not required to pay overtime compensation to nonexempt employees for "activities which are preliminary to or postliminary to [the] principal activity or activities" that they are employed to perform. 29 U.S.C. § 254(a)(2).

¶11        The leading recent case construing this provision of the Portal Act is *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014). In determining what constitutes a "principal activity" under § 254(a), the Supreme Court focused on whether the activity at issue is an integral and indispensable part of the employee's job. *Id.* at 33 (deciding whether post-

4

shift security screenings were compensable). Federal and state courts applying the Portal Act to security screenings have reached different conclusions concerning whether the screenings are "integral and indispensable" to jobs covered by the act. *Compare, e.g.*, *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1289 (10th Cir. 2020) (holding the pre-shift security screenings of corrections officers compensable), *with Hootselle v. Mo. Dep't of Corr.*, 624 S.W.3d 123, 139–40 (Mo. 2021) (holding the pre-shift security screenings of corrections officers non-compensable).

**¶12** In 1985, the Supreme Court ruled that the minimum wage and overtime provisions of the FLSA, including the Portal Act, are applicable to state and local government employers. *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 555–56 (1985). However, the FLSA expressly allows states to enact their own laws providing greater protections to workers than the FLSA requires. 29 U.S.C. § 218(a).[1]

**¶13** Arizona adopted § 23-392 to govern overtime compensation for certain law enforcement officers in 1975 with no reference to federal law. *See* 1975 Ariz. Sess. Laws ch. 51, § 1 (1st Reg. Sess.). At that time, § 23-392(A) read as follows:

> Any person engaged in law enforcement activities shall be compensated, for each hour worked in excess of forty hours in one work week, at the option of such employer either at a rate of:
> 1. One and one-half times the regular rate at which he is employed; or
> 2. One hour of compensatory time off in lieu of cash payment.

**¶14** In 1984, the Arizona Court of Appeals decided *Prendergast v. City of Tempe*, 143 Ariz. 14, 20–21 (App. 1984), holding that meal periods for certain officers constituted compensable work. The court observed that § 23-392(A) did not define "work." *Id.* at 17. The court also noted that 29 U.S.C. § 207(k), a provision in the FLSA that specifies overtime eligibility for law enforcement officers, "is irrelevant where the issue is the proper

---

[1] This was the basis for the court of appeals' holding that the FLSA does not preempt Arizona law in the context presented here. *Roberts*, 250 Ariz. at 594–95 ¶¶ 15–16.

definition of work time." *Id.* at 20 n.5. Rather, "[t]he proper and overriding test is whether the waiting time in issue is predominantly for the employer's benefit or for the employee's benefit." *Id.* at 19. More specifically, a court "must consider what the normal duties of the employee are and whether the employee's leisure is so restricted that it cannot be fairly said to be primarily for the employee's benefit," viewed in "the totality of *all* the circumstances." *Id.* at 20. As the State has acknowledged here, the *Prendergast* rule is akin to the definition of work applied by the Supreme Court in *Tennessee Coal* and thus provides greater protection for workers than the FLSA as amended by the Portal Act.

¶15            In 1986, two years after *Prendergast*, the legislature amended § 23-392(A) to provide overtime compensation for "[a]ny person engaged in law enforcement activities" beyond forty hours per week as follows:

1.  One and one-half times the regular rate at which such person is employed or one and one-half hours of compensatory time off for each hour worked if by the person's job classification overtime compensation is mandated by federal law.
2.  If by the person's job classification federal law does not mandate overtime compensation, the person shall receive the regular rate of pay or compensatory leave on an hour for hour basis.

1986 Ariz. Sess. Laws ch. 218, § 2 (2nd Reg. Sess.). The statute has been amended eight times since 1986, but the language at issue here—"if by the person's job classification overtime compensation is mandated by federal law"—remains unchanged, and no further references to federal law have been added.

¶16            The year after this legislative change, the Attorney General concluded that the Arizona Legislature had not incorporated § 207(k)'s method of calculating overtime for corrections officers into § 23-392(A), and also that state law did not conflict with federal law; therefore, the forty-hour work week method for calculating overtime compensation specified in state law would prevail. Op. Ariz. Att'y Gen. I87-158 (1987). The opinion did not define what constitutes work for purposes of triggering § 23-392(A). More recently, the court of appeals also applied the forty-hour work week

method in state law for calculating overtime compensation rather than the federal law method in § 207(k).  *Pijanowski v. Yuma County*, 202 Ariz. 260 (App. 2002).

¶17  In 2012, the legislature enacted A.R.S. § 41-743, which authorizes AZDOA's Director, among other things, to "[a]dopt rules and procedures relating to personnel and personnel administration," § 41-743(B)(3), encompassing ten specified areas, § 41-743(B)(3)(a)–(j).  That same year, AZDOA adopted Arizona Administrative Code R2-5A-404(A)(1), which incorporated by reference FLSA regulations 29 C.F.R. §§ 553 and 778.  Part 553 covers various topics, such as the treatment of volunteers, the accrual and use of compensatory time off, and recordkeeping requirements.  Part 778 covers the calculation of pay rates and FLSA overtime rates.  AZDOA did not adopt federal regulations specifically implementing the Portal Act.

¶18  The court of appeals here, having decided that state law incorporates the Portal Act, applied *Aguilar* to the facts of this case and concluded that pre-shift security screenings are compensable.  *Roberts*, 250 Ariz. at 597–99 ¶¶ 28–37.  For the reasons explained hereafter, we conclude that Arizona law does not incorporate the Portal Act and that whether the pre-shift security screenings at issue here are compensable should be decided as a matter of state law.  We therefore need not resolve the correct outcome under federal law.

### III.

#### A.

¶19  The parties agree that the meaning of the statutory language—"if by the person's job classification overtime compensation is mandated by federal law," § 23-392(A)(1)—is largely dispositive of the issues presented.  The State argues that those thirteen words implicitly incorporate into Arizona law (or, alternatively, authorize AZDOA to incorporate into Arizona law through regulation) not only the entirety of the FLSA, including the Portal Act, but also federal implementing regulations, federal agency interpretative bulletins, and federal court jurisprudence construing federal law and regulations.  That is a great deal of freight to load upon such a tiny statutory vessel.

**¶20**      The State effectively defeats its own argument by acknowledging that § 23-392(A) does not *expressly* incorporate the Portal Act into Arizona law, but rather does so *implicitly*.  It is a foundational rule of statutory construction "that courts will not read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself," and similarly the "court will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions." *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965).  Beyond its text, we will construe a statute to include only what is "necessarily implied" to effectuate the express manifest intention.  *See, e.g.*, *Maricopa County v. Douglas*, 69 Ariz. 35, 39 (1949).

**¶21**      This seminal rule of statutory interpretation applies here with special force.  We will not lightly divine legislative intent to displace state law with sweeping and prescriptive federal statutory law and administrative regulations.  The State argues that the statute evinces no intent to "diverge from the prevailing federal understanding on preliminary activities."  But in our system of federalism, we do not start with federal law and apply it unless the legislature manifests a contrary intent; rather, we presume that state law prevails unless we find a manifest intent to adopt federal law.  *Cf. Varela v. FCA US LLC*, 252 Ariz. 451, 457 ¶¶ 1–2 (2022) (noting there is no federal preemption under the Supremacy Clause of the United States Constitution when there is no conflict between a properly enacted state and federal law).

**¶22**      Section 23-392(A) does not expressly manifest a legislative intent to incorporate the entirety of the FLSA, including the Portal Act and implementing regulations, into Arizona law.  To the contrary, the plain language contains a mere reference to federal law, establishing under *state* law that eligibility for overtime compensation depends on whether "by the person's job classification overtime compensation is mandated by federal law."  § 23-392(A)(1)–(2).  Contrary to the court of appeals' far broader interpretation, *see Roberts*, 250 Ariz. at 595 ¶¶ 19–20, the unchanged language leading up to the reference to federal law pertains only to the *rate and method of calculating* overtime compensation and does not refer at all to the definition of work that would trigger such compensation.

**¶23**      For its broader view of the applicability of federal law, the court of appeals focused on the words from § 23-392(A) "is mandated by

federal law." *Id.* ¶ 19. But that language only amended § 23-392(A)'s preexisting standard for entitlement to overtime compensation. The key added words, in our view, are "if *by the person's job classification* overtime compensation is mandated by federal law." § 23-392(A) (emphasis added). That language does not reflect a sweeping incorporation of federal law but rather merely refers to a slice of federal law that addresses job classifications for which overtime compensation is mandated under the FLSA.

**¶24** In the specific context of corrections officers, we agree with the Officers that the slice of federal law referred to in § 23-392(A) is § 207(k), which provides for overtime compensation under certain circumstances for employees of public agencies engaged in fire protection or law enforcement activities. Section 207(k) precisely fits the bill for what the legislature provided in § 23-392(A). It defines a job classification—fire protection and law enforcement activities including security personnel in correctional institutions, which corresponds to the subject matter addressed in the state statute—and then provides for when such personnel are entitled to overtime compensation. That statute confirms that qualifying corrections officers are entitled to overtime compensation but does not go on to define "work" by reference to preliminary and postliminary activities as governed by the Portal Act or in any other manner. Nothing in the language of § 23-392(A) suggests an intent to incorporate federal law beyond its provisions regarding which job classifications are entitled to overtime.

**¶25** The historical sequence supports this interpretation in the context of overtime compensation for corrections officers. In its 1984 decision in *Prendergast*, the court of appeals noted that the legislature had not incorporated § 207(k) into state law. *See* 143 Ariz. at 20 n.5. Two years later, the legislature amended § 23-392(A) to include the reference to federal law. The following year, Attorney General Bob Corbin interpreted the statute's revision as referencing the FLSA's overtime compensation requirements, which in large part fall under § 207(k). Op. Ariz. Att'y Gen. I87-158 (1987); *see also Pijanowski*, 202 Ariz. at 263 ¶ 14 (noting generally the modest reach of § 23-392 and observing that "modification-by-implication is disfavored by courts when construing statutes"). We are referred to no subsequent authority taking a more expansive view of § 23-392(A) until

AZDOA adopted its regulations at issue here in 2012, twenty-six years after the statute was modified by adding a reference to federal law.[2]

¶26 Nor does the overall statutory context suggest a different result. The limited reference to "if by the person's job classification overtime compensation is mandated by federal law" in § 23-392(A) is the only such reference to a FLSA provision in the statute's entirety. Repeated references to federal law might support the State's incorporation argument, but a single reference for a specific, limited purpose strongly suggests the opposite. By contrast, for example, A.R.S. § 11-251(38) empowers counties to "establish salary and wage plans incorporating classifications and conditions prescribed by the federal fair labor standards act." The legislature knows how to provide authority to broadly incorporate federal law into state law when it wishes, and it did not do so here.

**B.**

¶27 As we conclude that the statute at issue does not incorporate the entirety of the FLSA, or more specifically the Portal Act, we must determine whether the pertinent AZDOA rules, as they relate to overtime compensation for law enforcement officers, are consistent with our state constitution's separation of powers. We conclude they are not. At the outset, then, we set forth our applicable decisional framework.

¶28 The Arizona Constitution embraced the concept of separation of powers embodied in its federal counterpart. At the federal level, separation of powers among the three branches of government is not explicit but rather implicit in the constitutional structure. *See, e.g.*, *Miller v. French*, 530 U.S. 327, 341 (2000); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 707 (2012) (Scalia, J., dissenting) ("The fragmentation of power produced by the structure of our Government is central to liberty, and when we destroy it, we place liberty at peril.").

---

[2] We do not decide here that § 23-392(A) solely refers to § 207(k), for there may be other provisions of the FLSA that pertain to eligibility for overtime compensation for the job classification at issue here. *See, e.g.*, 29 U.S.C. § 213(b)(20). Rather, we hold that § 23-392(A) does not extend to provisions of the FLSA that go beyond mandating overtime compensation for specific job classifications, such as statutes or administrative regulations defining "work."

**¶29**      Separation of powers limits both the power that may be delegated and the method by which it is delegated from the legislative branch to the executive. As Justice John Marshall stated, there are some "important subjects, which must be entirely regulated by the legislature itself" and others "of less interest, in which a general provision may be made, and power given to [others] to fill up the details." *Wayman v. Southard*, 23 U.S. 1, 20 (1825). "The true distinction . . . is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." *Marshall Field & Co. v. Clark*, 143 U.S. 649, 693–94 (1892) (citation omitted).

**¶30**      Thus, the Supreme Court limits the exercise of legislative power by the executive branch on major policy questions to instances where a statute "plainly authorizes" executive agency action. *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety and Health Admin.* (*NFIB v. OSHA*), 142 S. Ct. 661, 665 (2022), (invalidating emergency agency standards governing employer conduct). This doctrine "guard[s] against unintentional, oblique, or otherwise unlikely delegations of the legislative power." *Id.* at 669 (Gorsuch, J., concurring).

**¶31**      The Supreme Court recently instructed that, given this standard, the judicial inquiry "always begins (and often almost ends) with statutory interpretation. The constitutional question is whether Congress has supplied an intelligible principle to guide the delegee's use of discretion. So the answer requires construing the . . . statute to figure out what task it delegates and what instructions it provides." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019).

**¶32**      What the United States Constitution structurally implies, the Arizona Constitution makes explicit. Our constitution's framers devoted an entire article to separation of powers, comprised of a single command: "The powers of the government of the state of Arizona shall be divided into three separate departments, the legislative, the executive, and the judicial; and . . . no one of such departments shall exercise the powers properly belonging to either of the others." Ariz. Const. art. 3.

¶33        The article's plain language, conjoined with the separation of powers principles described above, establish the pertinent analytical framework: Is the power to define work (i.e., activities that constitute compensable work) by incorporating the FLSA and, more particularly, the Portal Act, properly exercised by an executive agency?

¶34        A unilateral exercise of legislative power by an executive agency violates separation of powers. *See, e.g.*, *Facilitec, Inc. v. Hibbs*, 206 Ariz. 486, 488 ¶ 10 (2003). By contrast, the legislature may properly delegate power to implement a statute so long as it plainly authorizes the executive agency to do so. *See, e.g.*, *id.*

¶35        The State, curiously, attaches great weight to this Court's decision in *State v. Williams*, 119 Ariz. 595, 598 (1978), which held that "[i]t is perfectly legitimate for the *Legislature* to adopt existing federal rules, regulations or statutes as the law of this state." (Emphasis added.) That is entirely right, but it undermines rather than supports the State's position. It establishes the proposition, inherent in the separation of powers, that the *legislature* may incorporate federal law. Thus, the threshold question is whether the legislature plainly adopted or authorized importation of the relevant federal law in the statutory passage at issue. As we held in the previous section, the legislature did not adopt the Portal Act; hence we turn to whether it sufficiently authorized AZDOA to adopt the Portal Act.

¶36        The State argues, and the trial court held, that AZDOA incorporated the FLSA, including the Portal Act and implementing regulations, into state law through its rulemaking power. We agree that AZDOA regulations purport to incorporate the FLSA regulations. But we hold that AZDOA was not legislatively authorized to incorporate the Portal Act for purposes of the Officers here. Absent explicit authorization by the legislature, it would violate our constitution's separation of powers for AZDOA to adopt the Portal Act for law enforcement officers, and no such authorization appears here. "[T]he scope of an agency's power is measured by statute and may not be expanded by agency fiat." *Saguaro Healing LLC v. State*, 249 Ariz. 362, 365 ¶ 19 (2020); *see also Facilitec*, 206 Ariz. at 488 ¶ 10 ("An agency . . . has no powers other than those the legislature has delegated to it . . . . Any excursion by an administrative body beyond the legislative guidelines is treated as an usurpation of constitutional powers

vested only in the major branch of government." (alteration in original) (citation omitted) (internal quotation marks omitted)).

¶37        Section 23-392(A) makes no express delegation of power to anyone.  As described above, it merely incorporates a portion of federal law into state law.  It is highly unlikely that the legislature would choose to bestow sweeping regulatory authority upon an agency in such an oblique and indirect fashion.  *See West Virginia v. EPA*, No. 20-1530, slip op. at 18 (U.S. June 30, 2022) ("Extraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle device[s].'" (alteration in original) (citation omitted)); *NFIB v. OSHA*, 142 S. Ct. at 668 (Gorsuch, J., concurring) (opining that a "lone statutory subsection does not clearly authorize OSHA's mandate").

¶38        In addition to § 23-392(A), AZDOA traces its authority to § 41-743(B)(3), enacted in 2012, which authorizes AZDOA's director to "[a]dopt rules and procedures relating to personnel and personnel administration."   The statute then sets forth nine specific areas of regulation, such as "[t]he establishment and maintenance of classification and compensation plans," § 41-743(B)(3)(a), and complaint procedures for discrimination and harassment, § 41-743(B)(3)(f).  Those are followed by a catch-all regulatory authorization for "[a]ny other aspects of personnel administration as determined by the director."  § 41-743(B)(3)(j).

¶39        That very same year, AZDOA adopted Ariz. Admin. Code R2-5A-404.  Specifically, this rule provides that "FLSA Regulations 29 CFR 553 and 778 (July 2012), are incorporated by this reference." R2-5A-404(A)(1).  As we evaluate the applicability of Parts 553 and 778 to the Officers here, we note that these Parts cover multiple matters not even remotely within the scope of § 23-392(A), such as treatment of volunteers (§ 553.100–.106); recordkeeping requirements (§ 553.50–.51); and sleep (§ 553.222), meal (§ 553.223), and training time (§ 553.226).  Part 553 is a formal regulation providing guidance regarding compensable hours of work for law enforcement employees.  *See* 29 C.F.R. § 553.221(b).  Part 778 is not a regulation at all but a U.S. Department of Labor interpretative bulletin.  Curiously, AZDOA did not adopt the implementing regulations for the Portal Act.  *See* 29 C.F.R. §§ 785, 790.

¶40        Despite the vast sweep of Parts 553 and 778, the State characterizes these regulations as merely an effort to "fill in the details" from § 23-392(A).  Whatever AZDOA's authority pursuant to § 41-743(B)(3) to "fill in the details" regarding overtime compensation, Ariz. Admin. Code R2-5A-404 cannot serve as a basis for incorporating the Portal Act into state law for purposes of determining overtime requirements for law enforcement officers, which the legislature has addressed in § 23-392.  The decision whether to incorporate the Portal Act into Arizona law for law enforcement officers—thereby determining whether time spent on certain activities is compensable—is the very definition of the type of major policy question that the legislature alone may determine.  As we concluded above, § 23-392(A) does not make such a determination.  Nor can § 41-743(B)(3), no matter how broadly AZDOA construes it, authorize AZDOA to incorporate the Portal Act into our state law for purposes of determining overtime requirements for law enforcement officers.  *See, e.g.*, *West Virginia v. EPA*, slip op. at 31 ("A decision of such magnitude and consequence rests with Congress itself, or an agency acting pursuant to a clear delegation from that representative body.").  Indeed, even as the legislature assigned narrow procedural rulemaking authority to AZDOA in § 41-743(B)(3), it subsequently determined that in actions involving state administrative agencies, the courts should interpret applicable statutes "without deference to any previous determination that may have been made on the question by the agency."  A.R.S. § 12-910(F).

¶41        Here again, the State concedes the legislature has not expressly authorized AZDOA regulations but asserts that its failure to countermand the regulations since they were adopted amounts to "implicit ratification" of the regulations.  The State contends that instead of the express delegation of legislative power that the constitution requires, an agency may unilaterally initiate what amounts to legislation that will stand unless the legislature takes positive action to erase it.  This novel theory subverts the command that none of the branches of government "shall exercise the powers properly belonging to either of the others."  Ariz. Const. art. 3.  Given that the legislative power cannot be outsourced to an executive agency without a statute delegating that power, *see Hibbs*, 206 Ariz. at 488 ¶ 10, it is inconceivable that it may be surrendered by legislative inaction.

¶42        Nor do we presume, as the State suggests, that the legislature is aware of all of the regulations adopted by the numerous state regulatory

agencies and tacitly approves them if it does not take contrary action. Even in the realm of legislative acquiescence to judicial opinions, we require some indication that the legislature deliberately did not change the law in response to a judicial opinion. *See, e.g.*, *State ex rel. Brnovich v. Ariz. Bd. of Regents*, 250 Ariz. 127, 133 ¶ 21 (2020) (stating a general reluctance to presume that legislative silence equates to legislative approval).

**¶43** We conclude that the legislature did not incorporate the Portal Act into § 23-392 nor expressly delegate authority to AZDOA to do so; and it probably could not have delegated its power given that such a major public policy decision is inherently legislative in nature, and the legislative power is inalienable. The legislature must first make the policy choice, then it may delegate to AZDOA the power to implement it.

**¶44** AZDOA possesses only such powers as the legislature delegates to it, *Facilitec*, 206 Ariz. at 488 ¶ 10, and the legislature has not expressly granted it authority to incorporate the Portal Act for purposes of determining the definition of work to trigger overtime compensation requirements for law enforcement officers; therefore, AZDOA's regulations are not binding as to whether the Officers' mandatory pre-shift screenings are work for which overtime compensation is required.

**¶45** We do not here decide, as the question is not yet before us, whether the *Prendergast* definition of work remains operative, whether subsequent developments may have altered it, or whether any Arizona statutory provisions provide guidance on the meaning of work. The trial court should consider these issues on remand. All we decide today is that the definition of work is a matter of state law, that § 23-392 does not incorporate the Portal Act for law enforcement officers, and that AZDOA is not authorized to do so.

**IV.**

**¶46** The Officers request attorney fees under A.R.S. § 12-341.01(A). In our discretion, reasonable attorney fees incurred in this Court are granted upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**¶47** We vacate the court of appeals' opinion and reverse the trial court's dismissal of the action. We remand the case to the trial court for further proceedings.